FILED
COURT OF APPEALS
DIVISION II

2014 MAY 20 AM 10: 55

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Order of Remand of the Growth Management Hearings Board of Eastern Washington, Case No. 05-1-0007, dated August 30, 2011<br><br>KATHY MIOTKE, an individual, and NEIGHBORHOOD ALLIANCE OF SPOKANE,<br><br>                  Petitioner,<br><br>   v.<br><br>SPOKANE COUNTY, a political subdivision of the State of Washington,<br><br>                  Respondent,<br><br>and<br><br>RIDGECREST DEVELOPMENTS, LLC, a Washington Limited Liability Company; FIVE MILE CORPORATION, a Washington Corporation; NORTH DIVISION COMPLEX, LLC, a Washington Limited Liability Company; CANYON INVESTMENTS, INC., a Washington Corporation; DONALD and VA LENA CURRAN, husband and wife; STEPHEN W. TREFTS d/b/a NORTHWEST TRUSTEE & MANAGEMENT SERVICES,<br><br>          Additional Named Parties. | No. 44121-7-II<br><br><br><br><br><br><br><br>PUBLISHED OPINION |

JOHANSON, J. — After Spokane County (County) expanded its comprehensive plan's "Urban Growth Area" (UGA), property owners in the newly-expanded UGA commenced urban development. Kathy Miotke and the "Neighborhood Alliance of Spokane" (Miotke) petitioned the Eastern Washington Growth Management Hearings Board (Board) for review of the County's expansion. The Board found the County's UGA expansion invalid under the Growth Management Act (GMA), ch. 36.70A RCW. In an attempt to address the invalidity determination, the County passed a resolution that repealed the UGA expansion resolution. Based on the repeal of the UGA expansion resolution, the Board found the County in compliance with the GMA. Miotke appeals the Board's decision, arguing that the mere repeal of the UGA expansion resolution fails to establish GMA compliance. We reverse the superior court decision upholding the Board and remand to the Board to determine whether repeal of the UGA expansion, given the urban development vested under it, has remedied the expansion's interference with GMA goals.

## FACTS

In August 2005, Miotke petitioned the Board to review the County's enactment of resolution 5-0649, which amended the County's comprehensive plan by expanding its UGA. In February 2006, the Board issued a final decision and order of invalidity (Final Order) finding that the County's expansion of its UGA violated the GMA. Specifically, the Board found that

resolution 5-0649 interfered with the GMA goals 1, 2, 3, and 12.[1] The Board found that the County failed to prepare a land quality analysis and failed to plan for capital facilities, utilities, and transportation among other things. The Board concluded that the County failed to "show its work" and ordered the County to bring itself into compliance with the GMA. Administrative Record (AR) at 76.

Between the enactment of resolution 5-0649 and the Board finding that resolution invalid for interfering with GMA goals, development permits were submitted and accepted by the County, thereby vesting urban development rights in the newly-expanded UGA. Urban development then occurred in these areas. This development is the center of the dispute here.

After its February 2006 Final Order, the Board twice found the County in continued noncompliance with the GMA. In July 2006, the Board found that the County was in noncompliance because it had failed to resolve any of the issues enumerated in the Final Order. The Board found further that the County failed to address "other issues of non-compliance such as the 'island UGA.'"[2] AR at 259.

---

[1] Goal 1 provides, "Urban growth. Encourage development in urban areas where adequate public facilities and services exist or can be provided in an efficient manner." RCW 36.70A.020(1). Goal 2 provides, "Reduce sprawl. Reduce the inappropriate conversion of undeveloped land into sprawling, low-density development." RCW 36.70A.020(2). Goal 3 provides, "Transportation. Encourage efficient multimodal transportation systems that are based on regional priorities and coordinated with county and city comprehensive plans." RCW 36.70A.020(3). And Goal 12 provides, "Public facilities and services. Ensure that those public facilities and services necessary to support development shall be adequate to serve the development at the time the development is available for occupancy and use without decreasing current service levels below locally established minimum standards." RCW 36.70A.020(12).

[2] This is the term used by Miotke and the Board to describe the expanded UGA that was determined to be invalid. "Island" is used because this subject area is surrounded by land designated "urban reserve."

3

In October, the Board determined that the County remained noncompliant, having resolved none of the issues set forth in the Final Order. The Board recognized that the County had made progress, but the Board raised concerns regarding the County's use of an "emergency provision" to allow further UGA expansion. The Board ordered the County to comply by December 6, 2006. Shortly thereafter, various cities within the County reported that their contributions to the planning process would not be available until after the County's compliance deadline.[3] In order to meet its deadline, the County considered removal of the subject land from the UGA. Endeavoring to achieve GMA compliance, the County passed resolution 7-0077 which repealed resolution 5-0649, shrinking the UGA back to the borders that existed before the adoption of resolution 5-0649.

Miotke submitted additional briefing urging the Board to conclude that adopting resolution 7-0077 and repealing the expanded UGA was inadequate to bring the County into compliance. For example, Miotke argued, "[T]he paper exercise of re-designation [of the UGAs], not only fails to comply with the Board's Final Order, it is inconsistent with other provisions of the GMA and substantially interferes with other GMA goals." AR at 633. Nevertheless, on March 5, 2007, the Board found that the County was now in GMA compliance: "With the repeal of the portions of the resolution which enlarged the UGA, the objected to action was removed and the County brought itself into compliance." AR at 698. The Board did not consider in either the order finding compliance or the order on reconsideration the effect of resolution 7-0077 with regard to the specific GMA violations enumerated by the Board in its

---

[3] There is some indication that the County feared that the Board would impose sanctions if it remained out of compliance any longer.

4

Final Order. On March 15, 2007, Miotke unsuccessfully moved for reconsideration. Miotke now appeals the superior court's order affirming the Board's Final Order.

## ANALYSIS

### I. APA STANDARD OF REVIEW

We review a hearings board's decision under the Administrative Procedure Act (APA), ch. 34.05 RCW. *Feil v. E. Wash. Growth Mgmt. Hearings Bd.*, 172 Wn.2d 367, 376, 259 P.3d 227 (2011). We apply APA standards directly to the Board's record, performing the same function as the superior court. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998). The party challenging the Board's decision bears the burden of proving it is invalid. RCW 34.05.570(1)(a). The decision is invalid if it suffers from at least one of many enumerated infirmities.[4] RCW 34.05.570(3).

We review de novo errors of law alleged under RCW 34.05.570(3)(d). *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008). We accord the Board's interpretation of the GMA "substantial weight." *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). But the Board's interpretation does not bind us. *City of Redmond*, 136 Wn.2d at 46.

We apply the substantial evidence review standard to challenges under RCW 34.05.570(3)(e), determining whether a sufficient quantity of evidence exists to persuade a fair-minded person of the truth or correctness of the order. *City of Redmond*, 136 Wn.2d at 46. We

---

[4] We must grant relief from a decision if, as relevant here,
> (d) [t]he agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when viewed
> in light of the whole record.

RCW 34.05.570(3).

view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001).

## II. COUNTY GMA COMPLIANCE

Miotke contends that RCW 36.70A.320(4) requires the County to respond to the Board's determination that resolution 5-0649 was invalid in a manner which shows that the County no longer substantially interferes with GMA goals. Specifically, Miotke argues that the County failed to address how mere repeal of the invalid UGA expansion will remedy the GMA violations outlined in the Board's Final Order.[5] Miotke claims that the Board's compliance finding resulted in an order that (1) was an erroneous interpretation and application of the law, (2) was not supported by substantial evidence, and (3) was arbitrary or capricious.

The County responds with two arguments to suggest that the Board correctly found the County no longer substantially interfered with GMA goals. First, the County argues that it did not violate GMA goals concerning reduction of urban sprawl (goal 1) and promotion of urban development within the UGA (goal 2) because the expanded UGA was valid at the time the developers' rights vested. Second, the County contends that it did not interfere with goals 3 and 12 because local regulations require adequate facilities and services in place before development is permitted to occur. Finally, the County asserts that it carried its burden to demonstrate

---

[5] Miotke initially argued that the Board erroneously shifted the burden of proof from the County to Miotke, but she now concedes that the Board applied the burden correctly. Wash. Court of Appeals oral argument, *Miotke v. Spokane County*, No. 44121-7-II (Jan. 14, 2014), at 29 min., 40 sec.–32 min., 45 sec. (on file with court). We accept this concession because the Board, which did misstate the burden, corrected the error in its compliance order.

compliance under RCW 36.70A.320(4) because resolution 7-0077 repealed resolution 5-0649, which created the noncompliance at the outset. We agree with Miotke.[6]

We conclude that the County failed to sustain its burden because merely rescinding resolution 5-0649, without more, does not establish that the County's initial UGA expansion no longer substantially interferes with GMA goals where urban development rights vested and urban growth occurred. Consequently, the Board's conclusion that the County was in compliance with the GMA was an incorrect application of the law and its order finding compliance was not supported by substantial evidence.

## A. RULES OF LAW

The purpose of the GMA is to control urban sprawl and to ensure that citizens, communities, local governments, and the private sector cooperate and coordinate with one another in comprehensive land use planning. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 138 Wn.2d 161, 166-67, 979 P.2d 374 (1999). The GMA requires that counties adopt a comprehensive plan which, among other things, designates UGAs. *King County*, 138 Wn.2d at 167. UGAs are regions within which urban growth is encouraged and outside of which growth can occur only if it is not urban in nature. Former RCW 36.70A.110(1) (2004); *King County*, 138 Wn.2d at 167. Hearings boards are charged with adjudicating GMA compliance.

---

[6] The County advances arguments tangential to this dispute that we need not fully address because they mischaracterize Miotke's position. First, the County argues that because determinations of invalidity are prospective in effect, the County could not prevent urban development from occurring outside the errant UGA once developers' rights vested by law. Second, the County argues that Miotke could have challenged proposed development permit applications under the Land Use Petition Act, ch. 36.70C RCW. But Miotke's central argument is not that site specific urban development should not have been permitted, but rather that the County was not free to diminish the UGA's size once vested urban growth had occurred and would remain without demonstrating that in doing so the County no longer substantially interfered with GMA goals.

*Whidbey Envtl. Action Network v. Island County*, 122 Wn. App. 156, 163, 93 P.3d 885 (2004), *review denied*, 153 Wn.2d 1025 (2005). The hearings boards conduct hearings and issue findings of compliance or noncompliance. RCW 36.70A.330(2).

We presume that comprehensive plans and development regulations are valid upon adoption. RCW 36.70A.320(1). And, generally, the petitioner has the burden to demonstrate that any action taken by an agency or local government is not in compliance with the GMA. RCW 36.70A.320(2). But

> [a] county or city subject to a determination of invalidity made under RCW 36.70A.300 or 36.70A.302 has the burden of demonstrating that the ordinance or resolution it has enacted in response to the determination of invalidity will no longer substantially interfere with the fulfillment of the goals of this chapter under the standard in RCW 36.70A.302(1).

RCW 36.70A.320(4); *Wells v. W. Wash. Growth Mgmt Hearings Bd.*, 100 Wn. App. 657, 666, 997 P.2d 405 (2000) ("[W]hen a local government is subject to a determination of invalidity, it bears the burden under RCW 36.70A.320(4).").

## B. VESTED RIGHTS AND LOCAL DEVELOPMENT REGULATION

First, we address the County's argument that it did not interfere with GMA goals 1 and 2 because development rights vested before resolution 5-0649 was found invalid and, secondly, that it did not interfere with goals 3 and 12 because local regulations require the existence of adequate services and facilities before urban development occurs. We disagree with the County.

When a County enacts urban development regulations that are later determined to violate the GMA, all development permit applications submitted before the County's receipt of the invalidity determination remain vested to the development regulations under which they were submitted. RCW 36.70A.302(2); *Town of Woodway v. Snohomish County*, 172 Wn. App. 643, 661, 291 P.3d 278 (2013), *aff'd*, No. 88405-6, 2014 WL 1419187 (Wash. Apr. 10, 2014). Vested

development rights entitle the developer to divide and develop the land in accordance with the statutes and ordinances in effect when a fully complete application is submitted. *See Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 275, 943 P.2d 1378 (1997).

Here, the County passed resolution 5-0649 in July 2005. After resolution 5-0649 expanded the UGAs, property owners in these newly-expanded UGAs sought and received permits to pursue urban development on their then-UGA properties. These permits vested before the Board found that resolution 5-0649 rendered the County's comprehensive plan noncompliant with the GMA. Accordingly, the vested rights doctrine protected rights of developers who completed permit applications after resolution 5-0649 was enacted, but before it was deemed invalid. Once these rights vested, the County could not extinguish developers' rights to complete projects in the now invalid UGA.

In the County's view, its inability to prevent urban development in the errant UGA expansion also compels the conclusion that it did not interfere with GMA goals designed to reduce urban sprawl and to prevent urban development outside of a valid UGA. We disagree.

The vested rights doctrine exists in part to ensure fairness to *landowners* and *developers* who would otherwise be subject to unforeseeable rule changes. *Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 637, 733 P.2d 182 (1987). The County cites no authority to suggest that the vested rights doctrine insulates the County from responsibility for its own shortcomings in the planning process. The vested rights doctrine and the provisions of the GMA are often intertwined, but nothing in our vested rights cases or in the language of the corresponding statutes indicates that the vesting of developers' rights somehow relieves a County from its obligation to comply with planning goals under the GMA. It was the County's enactment of resolution 5-0649 that gave rise to the sequence of events culminating in the

9

creation of an "island UGA." We reject the County's argument that the vested rights doctrine relieved the County of its burden to show compliance with the GMA.

Moreover, even if we accepted the County's argument that the vested rights doctrine precludes a finding that the County substantially interfered with goals 1 and 2, the County failed to demonstrate that it did not interfere with goals 3 and 12 that relate to transportation systems and public facilities. The County claims that certain safeguards exist to ensure the presence of these facilities in the form of County-mandated, project-level development regulations that are substantially similar to those contemplated by the GMA's planning goals. But the County did not advance this argument before the Board nor did it present evidence that these development regulations were sufficiently comprehensive such that the Board could determine whether the County no longer substantially interfered with the specified planning goals. Because the County did not present these arguments or the relevant evidence to the Board, we cannot conclude that a sufficient quantity of evidence exists to persuade a fair-minded person of the truth or correctness of the order on these grounds. *City of Redmond*, 136 Wn.2d at 46.

Accordingly, we reject the County's argument. Neither the vested rights doctrine nor the availability of project-level development regulations preclude a finding that the County substantially interfered with the GMA.

### C. EFFECT OF RESOLUTION 7-0077

The County also argues that the Board correctly determined that it no longer substantially interfered with GMA goals solely because it enacted resolution 7-0077, repealing the legislation that gave rise to the finding of invalidity in the Final Order. We disagree.

Following resolution 7-0077's adoption, the County moved the Board to determine whether it had reestablished compliance with the GMA. In response, the Board stated,

10

The question on compliance is whether the jurisdiction has met the requirements of the [GMA], not whether it complied with the specific directives of the Board's last order. . . .

. . . .

. . . The Petitioners contend that the Board should review the case substantially as well as procedurally. In doing so, the Board could only look at the County's action and whether it addresses the findings and conclusions in the [Final Order].

AR at 697-98.

An examination of the Board's language reveals that the Board understood that it was required to analyze whether the County, by enacting resolution 7-0077, sufficiently addressed the findings and conclusions of the Final Order. Stated otherwise, the Board's task was to determine whether repeal of the expanded UGA was sufficient to show that the County no longer substantially interfered with GMA goals 1, 2, 3, and 12. RCW 36.70A.320(4). The Board determined that repeal of resolution 5-0649 alone was sufficient. The Board erred when it so found.

Growth management hearings boards in other cases have expressly stated that a county fails to sustain its burden after a determination of invalidity when it makes no attempt to respond to the findings that gave rise to that determination. *Futurewise v. Lewis County*, No. 06-2-0003, 2006 WL 2349047, at *1 (Western Wash. Growth Mgmt. Hr'gs Bd. Aug. 2, 2006).[7] In *Futurewise*, the city of Winlock wished to alter the designation and mapping of lands from agricultural to urban in an attempted UGA expansion. 2006 WL 2349047, at *1. This land, however, was still subject to a determination of invalidity because the Board previously found

---

[7] Though administrative decisions are not binding on this court, these decisions can serve as guidance in the interpretation of the law. *Floating Homes Ass'n v. Dep't of Fish & Wildlife*, 115 Wn. App. 780, 788 n.33, 64 P.3d 29, *review denied*, 150 Wn.2d 1011 (2003).

that such an expansion created substantial interference with goal 8 of the GMA.[8] *Futurewise,* 2006 WL 2349047, at *1. The Board stated,

> [Lewis] County failed to offer any evidence that the change in designation and mapping of those lands as urban lands within the Winlock UGA will no longer substantially interfere with the fulfillment of the natural resource industries goal of the GMA. This is [Lewis] County's burden under RCW 36.70A.320(4) and 36.70A.302(7)(a).

*Futurewise,* 2006 WL 2349047, at *1.

In addition, a close reading of RCW 36.70A.320(4) does not support the County's interpretation that the Board merely had to find that resolution 7-0077 was itself in compliance with the GMA. The plain language of RCW 36.70A.320(4) states that the question is not whether the action to remedy the invalidity itself complies with the GMA, but whether the remedial action in response to the invalidity finding "will no longer substantially interfere" with the GMA. This language implies that the Board's analysis should not be confined strictly to the remedial action but that the Board should review the extent to which development that vested under the flawed UGA expansion interferes with GMA goals and should condition its finding of compliance on measures that will remedy that interference.

Here, the County presented no evidence that repeal of the UGA expansion resolution, in and of itself, demonstrates that the County is no longer substantially interfering with GMA goals 1, 2, 3, and 12. The Board is correct that the County removed the offending legislation and that no *additional* urban development can occur in the subject area. But the Board cannot simply ignore the facts that vested rights were secured, urban development was permitted, and such

---

[8] Goal 8 is aimed at the maintenance and enhancement of natural resource-based industries, including productive timber, agricultural, and fisheries industries. This goal also encourages the conservation of productive forest lands and productive agricultural lands, and discourages incompatible uses. RCW 36.70A.020.

development occurred, changing the status quo. In *Quadrant Corp.*, our Supreme Court held that a hearings board erred in ruling that a county could only consider "built environment" (which did not yet exist) in determining whether an area was already "characterized by urban growth." *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 154 Wn.2d 224, 240-41, 110 P.3d 1132 (2005). In so holding, the court endorsed the following reasoning regarding vested rights and urban growth:

> "Under the definition [of 'urban growth'] approved by the legislature, territory already committed to the process of growing in a manner incompatible with rural uses can be considered for an urban designation, and indeed it would be inconsistent with the goals of the GMA not to. . . . While there is always a possibility that construction may never occur, an area of land already committed to urban development from [King] County's perspective bears characteristics of urban use that should not be ignored in the planning process."

*Quadrant Corp.*, 154 Wn.2d at 241 (first two alterations in original) (quoting *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 119 Wn. App. 562, 580, 81 P.3d 918 (2003) (Coleman, J., concurring/dissenting), *aff'd in part, rev'd in part*, 154 Wn.2d 224).

Although the facts in *Quadrant* are distinguishable in that the county in *Quadrant* was considering whether to designate land as UGA, 154 Wn.2d at 240, the cited reasoning applies. Here, the vested rights doctrine opened the door for urban development. The rescission of the UGA then stranded areas of urban development in formerly rural zones without consideration of the planning policies or development standards needed to ensure consistency with the GMA. The area is now incompatible with rural uses, bearing characteristics of urban use that should not be ignored in the planning process. *Quadrant Corp.*, 154 Wn.2d at 241. The Board should have required the County to demonstrate how, in light of the vested urban development, that resolution 7-0077 terminates the County's interference with GMA goals as RCW 36.70A.320(4) demands.

13

One Board member believed that the County failed to meet its burden simply by repealing resolution 5-0649 and that the County should have considered existing urban growth. Board member John Roskelley dissented from the order on reconsideration, stating that

> [t]he County has not met its burden of proof simply by revoking Resolution 5-0649. The County failed to show or demonstrate how this action corrected the Board's order of February 14, 2006, and how this action will "no longer substantially interfere with the fulfillment of the goals under this chapter. . . ."
>
> . . . .
>
> . . . The County's initial action created an urban growth area . . ., with all the trappings and requirements, such as urban-like roads, police protection, public transportation, sewer and water, outside of a legally established UGA. This alone flies in the face of RCW 36.70A.110(1). The County must answer how its action no longer substantially interferes with the GMA goals.

AR at 730-31. We agree with Roskelley.

Here, the Board considered only the fact that the County repealed the legislation that gave rise to the invalidity and concluded on this basis alone that the County no longer substantially interfered with the four enumerated planning goals. The County did not present enough evidence for the Board to have made this determination. Under the GMA, local governments must coordinate and cooperate with their communities to ensure wise use of our lands and sustainable economic development. RCW 36.70A.010. Integral to the planning process is the recognition and adoption of the several planning goals as guiding principles in the development of comprehensive plans. RCW 36.70A.020. Upon a finding of invalidity in which the Board identifies specific ways in which the County's action strays from GMA principles, the County then bears the burden to show how the County's responsive action cures the resulting invalidity. RCW 36.70A.320(4).

The County failed in this regard because it did not produce sufficient evidence that resolution 7-0077 addressed the Board's original finding of invalidity in any meaningful way.

14

We need not determine what quantum of proof is necessary, but repeal of the offending legislation, without more, does not discharge the County's burden. The Board's conclusion to the contrary constituted an incorrect application of the law and its order finding compliance was not supported by substantial evidence. Viewing the evidence in the County's favor, the Board's compliance finding was not based on substantial evidence. Other than the paper rescission of the offending ordinance, there was no evidence submitted, much less a sufficient quantity of evidence, to persuade a fair-minded person of the truth or correctness of the Board's order. *City of Redmond*, 136 Wn.2d at 46. Accordingly, additional fact finding is required before it can be said that the County carried its burden.

We reverse the decision of the superior court upholding the Board's decision. We remand to the Board to determine whether the County, by reverting the subject land back to a rural designation but leaving urban development that has required and will continue to require urban-like services, no longer substantially interferes with GMA goals. On remand, the Board shall require the County to demonstrate compliance by producing evidence that resolution 7-0077 (1) encourages urban growth only in urban areas, (2) reduces urban sprawl, (3) encourages efficient multimodal transportation systems, and (4) ensures that available public facilities are adequate to serve the development. The Board shall consider this evidence in light of the vested urban development in the subject area.

No. 44121-7-II

## III. ATTORNEY FEES

The County seeks attorney fees on appeal. Because the County did not prevail, we deny its request for attorney fees. RAP 18.1

JOHANSON, J.

We concur:

WORSWICK, C.J.

BJORGEN, J.

16