IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35415-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JONATHAN D. DURANT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Jonathan Durant appeals the Department of Social and Health Services' finding of physical abuse of a child. Durant argues that his physical discipline did not amount to "physical abuse of a child" as defined by WAC 388-15-009 and RCW 9A.16.100. Because the Board of Appeals (BOA) misapplied the law, we remand for it to correct its analysis and perhaps reconsider its ultimate conclusion.

FACTS

Nicole Alexander is the biological mother of eight-year-old A.J. On May 5, 2015, she received a call from her son's teacher, who wanted to meet to discuss an incident at school. At the meeting, A.J.'s teacher said she had caught A.J. stealing things out of her desk and when confronted, A.J. lied to her.

After the meeting, Ms. Alexander confronted her son about what his teacher had said. A.J. denied that he had stolen anything. This caused Ms. Alexander to be extremely concerned. A.J.'s behavior had become increasingly defiant over recent months. Ms. Alexander believed that his stealing and lying about it was an escalation of his behavioral problems. She wanted to prevent A.J. from stealing and lying in the future and believed that the situation required a response stronger than scolding. Ms. Alexander decided to wait until her fiancé, Jonathan Durant, came home. She thought it was important for A.J. to view them as a parenting team.

Ms. Alexander and Mr. Durant discussed the proper punishment with A.J. and told him that he would receive five spankings for stealing and five more for lying. Ms. Alexander asked Mr. Durant to administer the spankings. She did not want to administer the spankings because the last time she spanked A.J., A.J. had openly mocked her. She also believed that A.J. respected her fiancé's authority more than he respected hers.

The spankings were administered by a wooden cutting board about one-half the size of a telephone book. Ms. Alexander was present the entire time of the spankings, which she described as "'swats.'" Clerk's Papers (CP) at 11. She did not believe the swats would leave a mark.

A short while later, they again discussed with A.J. the reasons he was punished. When A.J. continued to lie, Mr. Durant punished A.J. with three or four additional swats of the paddle. During the final set of swats, it became clear that they were not changing A.J.'s behavior. They stopped the physical discipline and decided it would be better to seek counseling and/or outside help for A.J.'s behavioral problems.

The following day, A.J.'s biological father, Andrew Foskett, took A.J. to the emergency room with a chief complaint of child abuse. A.J. had significant bruising on his right buttock and a small bruise on his left buttock. Mr. Foskett called law enforcement while at the hospital. Deputy Scott Kenoyer responded to the call.

When Deputy Kenoyer arrived at the hospital, he noticed A.J. sitting comfortably in a chair. A.J. explained to the deputy that he had been spanked 10 times by Mr. Durant the night before for lying. A.J. claimed he was spanked so hard that the paddle broke. He also claimed that he awoke from pain the night before when he rolled onto his back. The deputy decided not to refer the matter for criminal prosecution.

Mr. Foskett and the hospital made separate referrals to Child Protective Services (CPS), a division of the Department of Social and Health Services (Department). CPS assigned the investigation of the incident to Jennifer Erickson. Around this time, Mr. Foskett filed papers to modify parental custody of A.J.

Ms. Erickson interviewed Mr. Foskett. According to Mr. Foskett, A.J. told him Mr. Durant spanked him 10 times, he then hid in a corner, and his mom then pulled him out of the corner and spanked him three more times before the paddle broke.

Ms. Erickson interviewed A.J. twice. The first interview was simply to establish rapport. During the second interview, A.J. claimed Mr. Durant spanked him a total of 32 times and the paddle cracked.

Ms. Erickson interviewed Ms. Alexander. According to Ms. Alexander, A.J. was not crying or screaming while he was spanked, but he was angry and saying "ouch." CP at 9. She believed the spankings would sting but did not think they would leave a mark. She also said the paddle did not break.

Ms. Erickson interviewed Mr. Durant. According to Mr. Durant, A.J. received five spankings for stealing, five more for lying, and when he continued to lie, he received three or four additional spankings. Mr. Durant said he was calm and explained to A.J. why he was being disciplined. After the spankings, he gave A.J. a hug.

In the course of the investigation, it was determined that A.J. was four feet, six inches in height and weighed 80 pounds.

The Department determined that the report of physical abuse of a child was founded. Mr. Durant requested internal Department review of the finding. The finding

4

was upheld.  Mr. Durant requested an administrative hearing to contest the Department's

finding.

At the hearing, Ms. Erickson testified that she found Mr. Foskett and A.J. not

credible.  She believed that Mr. Foskett's and A.J.'s statements were inconsistent and

directly influenced by the pending custody issues.  She further testified that she found

both Ms. Alexander and Mr. Durant credible in their statements to her and their efforts

with the Department.  In her opinion, other than the significant bruising of A.J., she

believed that the discipline would have been appropriate.

Ms. Alexander testified she was present during the entire time of the spankings

and did not believe they would leave a mark; however, she did testify that A.J., like her,

bruises easily.  There was no evidence that Mr. Durant knew that A.J. bruised easily.  Ms.

Alexander testified that the bruises were gone by May 10.

The administrative law judge (ALJ) issued an initial order.  In the order, the ALJ

found that Ms. Alexander and Mr. Durant were credible and that Mr. Foskett and A.J.

were not credible.  The ALJ nevertheless affirmed the Department's finding of physical

abuse of a child.

Mr. Durant filed a petition for review to the Department's BOA. The BOA

reviewed the entire record and issued a comprehensive review decision and final order.

The BOA agreed with the ALJ's credibility determinations and explicitly found that Ms.

Alexander was credible. The BOA nevertheless affirmed the Department's finding of

physical abuse of a child.

Mr. Durant appealed the BOA's decision and order to the superior court, which

affirmed the BOA. Mr. Durant then appealed to this court.

## ANALYSIS

The Administrative Procedure Act (APA), chapter 34.05 RCW, governs this

court's limited review of an agency's order. *Campbell v. Emp't Sec. Dep't*, 180 Wn.2d

566, 571, 326 P.3d 713 (2014). The review is of the agency's decision, not the superior

court. *Id.* Under RCW 34.05.570, the reviewing court can invalidate an administrative

order on nine different bases. RCW 34.05.570(3)(a)-(i). Because Mr. Durant is asserting

the invalidity of the agency decision, he has the burden of proof. RCW 34.05.570(1)(a).

Mr. Durant contends there was not substantial evidence from which a reasonable

person could make the same finding as the BOA.[1] We generally agree.

---

[1] Mr. Durant asserts no error to any findings of fact. Therefore, the facts found by the BOA are verities on appeal. *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000).

"'Substantial evidence' is evidence of a 'sufficient quantity . . . to persuade a fair-minded person of the truth and correctness' of the agency action." *Campbell*, 180 Wn.2d at 571 (internal quotation marks omitted) (quoting *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004)). "'We view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority.'" *Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 188 Wn. App. 467, 482, 353 P.3d 680 (2015) (quoting *Miotke v. Spokane County*, 181 Wn. App. 369, 376, 325 P.3d 434 (2014)).

"Abuse or neglect" is defined as "sexual abuse, sexual exploitation, or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety, excluding conduct permitted under RCW 9A.16.100." RCW 26.44.020(1).

RCW 9A.16.100 provides:

> [T]he physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent, teacher, or guardian for purposes of restraining or correcting the child. Any use of force on a child by any other person is unlawful unless it is reasonable and moderate and is authorized in advance by the child's parent or guardian for purposes of restraining or correcting the child.
> The following actions are presumed unreasonable when used to correct or restrain a child: (1) Throwing, kicking, burning, or cutting a child; (2) striking a child with a closed fist; (3) shaking a child under age three; (4) interfering with a child's breathing; (5) threatening a child with a deadly weapon; or (6) *doing any other act that is <u>likely to cause</u> **and** <u>which does cause</u>* bodily harm greater than transient pain or minor temporary

7

> marks. The *age, size, and condition of the child and the location of the injury* shall be considered when determining whether the bodily harm is reasonable or moderate. This list is illustrative of unreasonable actions and is not meant to be exclusive.

(Emphasis added.) Here, it is undisputed that Ms. Alexander gave Mr. Durant authority to spank her son, so the question is whether Mr. Durant's use of force was reasonable and moderate.

The BOA determined that the spankings here were presumed unlawful under the sixth described action. That is, the spankings caused bodily harm greater than transient pain or minor temporary marks. But this finding is insufficient. The sixth described action also requires a finding that the act was "likely to cause" bodily harm greater than transient pain or temporary marks. More to the point, would an objective viewer of the discipline believe the spankings were "likely to cause" bodily harm greater than transient pain or temporary marks. *See State v. Singleton*, 41 Wn. App. 721, 723, 705 P.2d 825 (1985) (The prevalent approach is to determine whether the parental conduct itself, viewed objectively, would be considered excessive, immoderate, or unreasonable.).

The strongest evidence on this point comes from the testimony of Ms. Alexander—who the CPS investigator, the ALJ, and the BOA all found credible. She testified that she saw the spankings and did not believe they would leave a mark. Ms. Alexander was in the best position to know whether the spankings would likely leave a

8

mark. She knew her son bruised easily and, even with that knowledge, did not believe the spankings would leave a mark. An objective person, not knowing what Ms. Alexander knew of A.J., would be more likely to believe that the spankings would not leave a mark.

But this objective inquiry is best left to the finder of fact. Here, the finder of fact is the BOA. We, therefore, remand with instructions for the BOA to answer the following question: Given the present record, would an objective viewer of the spankings believe the discipline was likely to cause bodily harm greater than transient pain or temporary marks?[2] If not, it should set aside the Department's finding of physical abuse of a child.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

---

[2] Disciplining an eight-year-old boy by paddling him on his buttocks is inoffensive and reasonable compared to the offensive and unreasonable examples of force set forth in RCW 9A.16.100. If after remand, the BOA finds that the discipline administered here is presumptively unreasonable, we direct that it also consider whether, under RCW 9A.16.100, this presumption has been overcome.