# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CLARK COUNTY, | No. 50847-8-II |
| Petitioner/Cross Respondent, | (Consolidated) |
| FRIENDS OF CLARK COUNTY; FUTUREWISE, | |
| Respondents/Cross Petitioners, | |
| and | |
| CITY OF RIDGEFIELD; CITY OF LA CENTER; RDGB ROYAL ESTATE FARMS LLC; RDGK REST VIEW ESTATES LLC; RDGM RAWHIDE ESTATES LLC, RDGF RIVER VIEW ESTATES LLC, RDGS REAL VIEW LLC, and 3B NORTHWEST LLC, | |
| Petitioners, | |
| and | |
| CLARK COUNTY CITIZENS UNITED, INC., | |
| Petitioners, | |
| v. | |
| GROWTH MANAGEMENT HEARINGS BOARD, | |
| Respondent. | |

No.  50847-8-II;
Cons. 51745-1-II

| CLARK COUNTY, | No.  51745-1-II |
| --- | --- |
| Petitioner/Cross-Respondent, | |
| | |
| FRIENDS OF CLARK COUNTY; FUTUREWISE, | |
| Respondents/Cross Petitioners, | |
| and | |
| CITY OF RIDGEFIELD; CITY OF LA CENTER; RDGB ROYAL ESTATE FARMS LLC; RDGK REST VIEW ESTATES LLC; RDGM RAWHIDE ESTATES LLC, RDGF RIVER VIEW ESTATES LLC, RDGS REAL VIEW LLC, and 3B NORTHWEST LLC, | |
| Petitioners, | |
| and | |
| CLARK COUNTY CITIZENS UNITED, INC., | |
| Petitioners, | |
| v. | PART PUBLISHED OPINION |
| GROWTH MANAGEMENT HEARINGS BOARD, | |
| Respondent. | |

WORSWICK, J. — The Growth Management Act (GMA), chapter 36.70A RCW, requires

Clark County to periodically update its comprehensive land use and zoning plan.  Clark County

updated its plan in 2016 (2016 Plan Update), making several changes to the County's

comprehensive plan.

The Friends of Clark County and Futurewise (FOCC), as well as Clark County Citizens United (CCCU), petitioned the Growth Management Hearings Board (Board) to review the 2016 Plan Update for compliance with the GMA. The City of Ridgefield, City of La Center, 3B Northwest LLC (3B), and five other individual LLCs[1] intervened in that action.

The Board issued its Final Decision and Order (FDO), which concluded, in part, that the County did not comply with the GMA when it (1) dedesignated three areas of agricultural land and designated these lands as urban growth areas (UGA), (2) dedesignated agricultural land and designated this area as a rural industrial land bank (RILB), (3) reduced agricultural and forestland parcel sizes, and (4) adjusted rural densities. However, the Board concluded that the County complied with the procedural requirements of the GMA.

The County took some efforts to come into compliance, after which the Board issued a compliance order. The Board concluded that the County remained noncompliant regarding dedesignating agricultural land for two UGAs and the RILB but that it had complied regarding one UGA, the agricultural and forestland parcel sizes, and rural densities.

The parties appeal both the FDO and the compliance order. Additionally, FOCC moves to dismiss the County's and 3B's petitions for judicial review of the FDO for lack of appellate jurisdiction because they did not properly and timely serve their petitions for judicial review.

The County, La Center, Ridgefield, and the LLCs argue that the Board's finding of the County's noncompliance regarding the County's UGA designations are moot and that the Board acted arbitrarily and capriciously by requiring the County to take further action regarding these

---

[1] RDGB Royal Estate Farms LLC, RDGK Rest View Estates LLC, RDGM Rawhide Estates LLC, RDGF River View Estates LLC, and RDGS Real View LLC.

3

UGAs.  The County also argues that the Board erroneously interpreted a rule regarding agricultural lands and erred when it concluded that the County violated the GMA by dedesignating agricultural lands for the RILB.

CCCU argues that the Board erred by concluding that the County complied with the GMA's procedural requirements regarding public participation, an issue paper, and source documents, and that the County complied with the GMA regarding designations of agricultural and forestlands, population projections, and private property considerations.  CCCU further argues that the Board erred by concluding the County violated the GMA when the County reduced parcel sizes of agricultural and forestland.

FOCC argues that the compliance order erroneously declared issues to be moot regarding readopted forestland and rural density provision from the County's prior comprehensive plan.

We grant FOCC's motion to dismiss the County's and 3B's petitions for judicial review of the FDO, for lack of appellate jurisdiction.  In the published portion of our opinion, we hold that issues regarding the annexed lands are moot.  In the unpublished portion of this opinion, we hold that the Board did not err regarding the remaining issues raised by CCCU and FOCC, and remand to the Board for further proceedings in accordance with this opinion.

FACTS

The County adopted the 2016 Plan Update by Amended Ordinance No. 2016-06-12 on June 28, 2016.  In this update, the County dedesignated three areas of agricultural land and designated these lands as UGAs, dedesignated an area of agricultural land and designated this land as RILB, reduced agricultural and forestland parcel sizes, and adjusted rural densities.

4

Two of the newly designated UGAs were adjacent to the cities of La Center and Ridgefield.  Immediately following the 2016 Plan Update's passage, La Center and Ridgefield began the process of annexing these adjacent UGAs into their respective cities.

FOCC and CCCU petitioned the Board regarding the 2016 Plan Update.  The Board consolidated these appeals.  La Center, Ridgefield, 3B, and the LLCs intervened.  Prior to the Board's decision, La Center passed an ordinance annexing its adjacent UGA, effective on August 29, 2016.  Ridgefield passed an ordinance annexing its adjacent UGA, effective on October 14, 2016.

The Board issued its FDO on March 23, 2017.  The Board determined some provisions invalid and found other provisions noncompliant.[2]  The Board concluded, in part, that the County did not comply with the GMA when it (1) dedesignated agricultural land and designated the UGAs, (2) dedesignated agricultural land and designated the RILB, (3) reduced agricultural and forestland parcel sizes, and (4) adjusted rural densities.  Further, the Board made determinations of invalidity regarding the County's UGA designations.  The Board remanded the 2016 Plan Update to the County for the County to come into compliance with the GMA.

The County, Ridgefield, La Center, the LLCs, and CCCU filed petitions for review of the Board's FDO in superior court.  Those petitions were consolidated by stipulation of the parties.  FOCC sought direct review of the Board's FDO, and we granted review.

After the Board remanded the 2016 Plan Update, and while appeal of the FDO was pending, the County adopted new amendments to its comprehensive plan that returned the parcel

---

[2] The Board did not make separate findings of fact and conclusions of law for each issue it addressed.  Rather, the Board conducted its analysis, citing evidence, and then usually stated, "The Board finds and concludes . . . ." *See, e.g.*, AR at 10499.

sizes and rural densities to their previous designations before the 2016 Plan Update amendments. The County also reversed one UGA designation during this period; however, the County did not take remedial action regarding the UGAs annexed by Ridgefield and La Center, arguing that it could not change the designation of land no longer within its control.

The Board issued a compliance order on January 10, 2018, concluding that the parcel sizes and rural density issues were moot and compliant because the County had adopted previously GMA-compliant provisions. The Board also concluded that the County was not in compliance regarding the UGAs annexed by La Center and Ridgefield.

Subsequently, Ridgefield, La Center, the County, the LLCs, 3B, and FOCC sought direct review of the Board's compliance order and consolidation with the review of the FDO. We accepted direct review of the compliance order and consolidated the appeals.

ANALYSIS

I. MOTION TO DISMISS

As an initial matter, we address FOCC's motion to dismiss the County's and 3B's petitions for judicial review of the Board's FDO. FOCC argues that this court lacks subject matter, or appellate, jurisdiction because the County and 3B failed to timely serve the Board with their respective petitions for judicial review as required by RCW 34.05.542, due to their failure to deliver their petitions for judicial review to the Board within 30 days. Thus, FOCC argues that the County's and 3B's failure to properly serve the Board deprives us of appellate jurisdiction.

We hold that service of the petition for judicial review by e-mail does not satisfy the service requirements of the Administrative Procedure Act (APA), chapter 34.05 RCW, and that

service on the agency is complete when the petition for review is delivered to the agency.  As a

result, we hold that the County's and 3B's petitions are untimely, and we grant FOCC's motion

to dismiss Clark County's and 3B's petitions for judicial review of the FDO.

A.      *Facts Pertaining to the Motion To Dismiss*

The Board issued its final decision to the parties on March 23, 2017.  The deadline for

filing petitions for judicial review was April 24.  The County e-mailed its petition for judicial

review to the Board and mailed its petition to both the Board and the attorney general's office

using the United States Postal Service on April 24.[3]  3B sent its petition to the Board through

FedEx overnight delivery on April 24.  3B concedes that its petition was received by the Board

on April 25.  The attorney general's office filed a notice of appearance, representing the Board,

on May 11.

B.      *Standard of Review*

We review de novo questions of a court's jurisdiction.  *Ricketts v. Bd. of Accountancy*,

111 Wn. App. 113, 116, 43 P.3d 548 (2002).  A party may raise a question of appellate, or

subject matter, jurisdiction for the first time at any point in a proceeding.  *Skagit Surveyors &*

*Engineers, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998).

We also review the meaning of a statute de novo.  *Ricketts*, 111 Wn. App. at 116.  Our

fundamental objective in statutory interpretation is to give effect to the legislature's intent.  *Dep't*

*of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).  If a statute's

meaning is plain on its face, then we give effect to that plain meaning as an expression of

legislative intent.  *Pac. Marine Ins. Co. v. State ex rel. Dep't of Revenue*, 181 Wn. App. 730,

---

[3] The County does not contend that the physical copy arrived on or before April 24.

737, 329 P.3d 101 (2014).  "Absent ambiguity, a statute's meaning must be derived from the wording of the statute itself without judicial construction or interpretation."  *Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998).

C.      *Appeals From Decisions of the Board*

The APA governs appeals from decisions of the growth management hearings board. *Skagit Surveyors*, 135 Wn.2d at 555.  A court does not obtain jurisdiction over an appeal from an agency decision unless the appealing party timely files and serves the petition for judicial review on the agency and all parties.  *Skagit Surveyors*, 135 Wn.2d at 555.  A petition for judicial review must be dismissed if the APA's service requirements are not met.  *Sprint Spectrum, LP v. Dep't of Revenue*, 156 Wn. App. 949, 961, 235 P.3d 849 (2010).  "Substantial compliance with the service requirements of the APA is not sufficient to invoke . . . appellate, or subject matter, jurisdiction."[4]  *Skagit Surveyors*, 135 Wn.2d at 556.

Under the APA, a petition for judicial review of an agency order must be served on all parties of record within 30 days after service of the final order.  RCW 34.05.542(2).  The APA provides:

> "Service," *except as otherwise provided in this chapter*, means posting in the United States mail, properly addressed, postage prepaid, or personal or electronic service.  Service by mail is complete upon deposit in the United States mail. Agencies may, by rule, authorize service by electronic transmission, or by commercial parcel delivery company.

RCW 34.05.010(19) (emphasis added).

---

[4] Like here, the agency appeal in *Skagit Surveyors* was initially heard by the court of appeals and not the superior court.  *Skagit Surveyors*, 135 Wn.2d at 556 n.9.

But RCW 34.05.542(4) contains an exception to this definition.  *Ricketts*, 111 Wn. App. at 117-18; *Stewart v. Dep't of Employment Sec.*, 191 Wn.2d 42, 47, 419 P.3d 838 (2018).  Under that statute, the petitioner must serve the agency that issued the order by delivery to the director's office, the agency's principal office, or by serving the agency's attorney of record.  RCW 34.05.542(4); *Stewart*, 191 Wn.2d at 47.

Service on the agency requires delivering the petition for judicial review to the agency within 30 days of the final order.  RCW 34.05.542 (2), (3), (4).  Here, the Board issued its final decision to the parties on March 23.  Thirty days from March 23 was April 22, which was a Saturday.  Therefore, the petition for judicial review was due April 24, the next business day.

1.      *The County's Petition Was Untimely Served*

In response to FOCC's motion, the County argues that its petition for judicial review was timely served because it e-mailed the petition to the Board.  The County does not argue that it timely served the Board by mailing the petition on April 24, but instead states that FOCC's challenge is "limited to the question of whether email service on an agency satisfies delivery pursuant to RCW 34.05.542(4)."  Reply Br. of Clark County at 13.  The County argues that service by e-mail satisfies the "delivery" requirement of RCW 34.05.542(4) because the Board has authorized service by electronic transmission in WAC 242-03-240(1).  We hold that service by e-mail is insufficient to satisfy the requirements of RCW 34.05.542(4).

The Board is allowed to authorize service by electronic transmission.  RCW 34.05.010(19).  But it has not done so.  The County relies on WAC 242-03-240.  WAC 242-03-240 is titled, "Filing and service of all other papers," and provides that parties shall electronically file pleadings and briefs to the board, and electronically complete service to other parties.  But

No. 50847-8-II;
Cons. 51745-1-II

this rule is not applicable to appeals from the board's decision. WAC 242-03-240, and Title 242 of the Washington Administrative Code generally addresses practices and procedures for matters *in front of* the growth management hearings board. WAC 242-03-035. Appeals *from* the Board's final decision are governed by RCW 34.05.514 and RCW 34.05.542. RCW 36.70A.300; WAC 242-03-970.

Moreover, WAC 242-03-240 does not authorize service of any type of petition for judicial review by e-mail. WAC 242-03-240 refers to the "[f]iling and service of all other papers," meaning other than a petition for review to the Board. WAC 242-03-230 specifically addresses filing and service of the petition for review for cases appealed to the Board. Thus, the "all other papers" referred to in WAC 242-03-240 describes all papers except a petition for review. And the only petition for review addressed in WAC 240-03-230 is a petition filed at the board, not a petition for *judicial* review filed in superior court after the Board has made its decision.

Here, the County was required to serve the agency by "delivering" the petition for judicial review to the agency's office by April 24.[5] RCW 34.05.542(4).[6] Unless authorized by

---

[5] The County also mailed the petition to the attorney general's office using the United States mail on April 24. FOCC argues that mailing the petition to the attorney general does not adequately serve the Board because the attorney general had not appeared as the Board's attorney of record until May 11. The County does not argue that mailing the petition constitutes service on the Board, thus, we do not address this issue.

[6] "Service of the petition on the agency shall be by delivery of a copy of the petition to the office of the director, or other chief administrative officer or chairperson of the agency, at the principal office of the agency. Service of a copy by mail upon the other parties of record and the office of the attorney general shall be deemed complete upon deposit in the United States mail, as evidenced by the postmark." RCW 34.05.542(4).

10

the agency, electronic transmission, such as e-mail, is not a proper form of service. RCW 34.05.010(19). Although service on other parties of record is complete when the petition is deposited in the United States mail, service on the agency is complete only when it is "delivered" to the Board. RCW 34.05.542(4).

Here, the Board did not authorize service by electronic transmission. Because e-mail is not an authorized form of service, the County did not deliver its petition for review to the Board's office by April 24, 2017. The County did not timely serve its petition for judicial review, and we do not have appellate jurisdiction over its petition for review appealing the FDO. We grant FOCC's motion to dismiss the County's petition from the Board's FDO.[7]

2.    *3B's Petition Was Untimely Served*

In response to FOCC's motion to dismiss, 3B argues that it properly served the Board by sending its petition for judicial review to the Board through FedEx and that its service of the petition was complete on April 24 when it delivered its petition to FedEx. We disagree.

As discussed above, RCW 34.05.542(4) provides an exception to the general rule that service is complete upon deposit in the United States mail. RCW 34.05.010(19); *Stewart*, 191 Wn.2d at 47; *Ricketts*, 111 Wn. App. at 117-18. Under the exception, service on the agency is not complete until the petition is actually delivered to the agency's office. RCW 34.05.542(4); *see Ricketts*, 111 Wn. App. at 118. Even assuming service through a commercial parcel delivery company like FedEx was proper, 3B did not timely serve the petition because the Board did not

---

[7] FOCC does not argue that the County's appeal from the Board's compliance order was untimely. Accordingly, we consider the County's arguments regarding the Board's compliance order below.

receive the petition until April 25.  Because 3B's petition was due to the Board by April 24, 3B

did not timely serve its petition for review and we do not have appellate jurisdiction over its

petition for review appealing the FDO.[8]  Thus, we grant FOCC's motion to dismiss 3B's petition

for judicial review from the Board's FDO.[9]

## II.  BOARD DECISIONS — LEGAL PRINCIPLES

Washington's APA governs our review of the Board's decisions.  RCW 34.05.570(3);

*Whatcom County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 186 Wn.2d 648, 666, 381 P.3d 1 (2016).

Under the APA, we review the Board's legal conclusions de novo, but we give "substantial

weight to the Board's interpretation of the GMA."  *Whatcom County*, 186 Wn.2d at 667.  RCW

34.05.570(3) provides nine enumerated ways to challenge an agency action through judicial

review.  The parties here challenge the Board's actions under five statutory sections: (1) the

Board's order is outside its statutory authority or jurisdiction; (2) the Board erroneously

interpreted or applied the law; (3) the Board engaged in unlawful procedure or decision making,

or has failed to follow proscribed procedures; (4) the Board's actions are not support by

substantial evidence; and (5) the Board's actions are arbitrary and capricious.  RCW

---

[8] 3B also asserts that FedEx is a proper method of service because RCW 34.05.010(19) "acknowledges the potential for service by commercial parcel delivery company, such as FedEx."  Reply Br. of 3B at 3 (footnote omitted).  3B is correct that agencies may, by rule, authorize service by commercial parcel delivery company.  RCW 34.05.010(19).  However 3B does not provide authority establishing that the Board authorized service of petitions for judicial review by commercial parcel delivery company.  Moreover, 3B concedes that the Board did not receive its petition until April 25.  We do not determine whether the Board authorized service by commercial parcel delivery company because 3B's service was untimely.

[9] In light of our holding that the dedesignation and designation of the annexed UGAs issue is moot, our decision to grant FOCC's motion to dismiss 3B's appeal from the FDO has no practical bearing on this case.

34.05.570(3)(b)-(e), (i).  Here, the party challenging the Board's decision bears the burden of establishing that the decision is improper.  RCW 34.05.570(1)(a), (3)(d); *Whatcom County*, 186 Wn.2d at 667.

On review from initial challenges and on review following a Board's remand for compliance, the Board determines whether a county's plan is compliant with the GMA.  RCW 36.70A.300(3).  The Board must find compliance with the GMA "unless it determines that the action by the . . . county . . . is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]."  RCW 36.70A.320(1), (3).  To find a county's action clearly erroneous, the Board must be "'left with the firm and definite conviction that a mistake has been committed.'"  *Whatcom County*, 186 Wn.2d at 667 (internal quotation marks omitted) (quoting *King County v. Cent. Puget Sound Growth Mgmt. Bd.*, 142 Wn.2d 543, 561, 14 P.3d 133 (2000)).

Counties have discretion to make many choices about accommodating growth in their comprehensive plans and amendments.  RCW 36.70A.110(2).  County actions are presumed compliant and Boards must defer to local planning decisions.  *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 154-55, 256 P.3d 1193 (2011).  However, we do not afford counties deference in their interpretations of the GMA, and counties must comply with the requirements of the GMA.  *Whatcom County*, 186 Wn.2d at 667; *King County*, 142 Wn.2d at 561.  Deference to a county's planning decisions supersedes the general deference we give to the Board under the APA.  *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224, 238, 110 P.3d 1132 (2005).  It is under these guidelines that we review the correctness of the Board's determination regarding whether the County's actions were clearly

13

erroneous. *Concerned Friends of Ferry County v. Ferry County*, 191 Wn. App. 803, 813, 365 P.3d 207 (2015).

We review the Board's factual findings for substantial evidence. *Kittitas County*, 172 Wn.2d at 155. Evidence is substantial if "when viewed in light of the whole record," RCW 34.05.570(3)(e), there is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness'" of the finding. *Kittitas County*, 172 Wn.2d at 155 (quoting *Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008)). When reviewing mixed questions of law and fact, we determine the law independently and apply the law to the facts found by the Board. *Thurston County*, 164 Wn.2d at 341. We consider whether the Board's factual findings support its conclusions. *Kittitas County v. Kittitas County Conserv. Coal.*, 176 Wn. App. 38, 55 n.3, 308 P.3d 745 (2013).

We determine whether a Board's order is arbitrary and capricious by reviewing "whether the order represents 'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *Kittitas County*, 172 Wn.2d at 155 (internal quotation marks omitted) (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46-47, 959 P.2d 1091 (1998)). "Issues not raised before [the Board] may not be raised on appeal." RCW 34.05.554(1). An exception exists if "[t]he interests of justice would be served by resolution of an issue arising from . . . [a]gency action occurring after the person exhausted the last feasible opportunity for seeking relief from the agency." RCW 34.05.554(1)(d)(ii).

We conduct statutory interpretation to determine and give effect to legislative intent. *Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 173, 322 P.3d 1219 (2014).

14

Legislative intent is primarily deprived from statutory language. *Town of Woodway*, 180 Wn.2d at 173-74. When the statutory language is unambiguous, we apply the plain meaning of the statute. *Town of Woodway*, 180 Wn.2d at 174. In the absence of legislative definitions, we give statutory terms their plain and ordinary meanings as defined in the dictionary. *Lockner v. Pierce County*, 190 Wn.2d 526, 537, 415 P.3d 246 (2018). When analyzing a statute's plain language, we consider the specific text of the relevant provision, the context of the entire statute, related provisions, and the statutory scheme as a whole. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). We do not liberally construe the GMA. *Woods v. Kittitas County*, 162 Wn.2d 597, 614, 174 P.3d 25 (2007).

### III. MOOTNESS OF UGA DESIGNATIONS RESULTING FROM ANNEXATIONS

La Center, Ridgefield, and the LLCs argue that the Board's finding of the County's noncompliance regarding the County's UGA designations is moot. Specifically, they argue that the Board (1) erroneously failed to acknowledge that the County's action regarding the UGAs was rendered moot by the annexations and (2) arbitrarily and capriciously required the County to take action regarding land no longer within its control. We hold that arguments regarding the annexed lands are moot.

A.     *Facts Pertaining to the Mootness of UGA Designations Resulting from Annexations*

In the County's 2016 Plan Update, the County dedesignated areas of agricultural land adjacent to the cities of La Center and Ridgefield and designated these lands as UGAs. Both La

Center and Ridgefield annexed these adjacent UGAs into their respective cities long before the

Board's hearing in February 2017.[10]

The Board concluded, in part, that the County did not comply with the GMA when it

dedesignated agricultural land and designated the UGAs. Further, the Board made

determinations of invalidity regarding the County's UGA designations. The Board remanded the

2016 Plan Update to the County for the County to come into compliance with the GMA.

The County did not take remedial action regarding the UGAs relevant here, arguing that

it could not change the designation of the annexed land no longer within its control. The Board

concluded that the County was not in compliance regarding these UGAs.

B.      *GMA Compliance Legal Principles*

The Board may review comprehensive plans and their amendments for compliance with

the GMA. RCW 36.70A.280. However, the Board lacks the authority to determine many types

of land-related disputes. Relevant here, the Board does not have authority to review cities' land

annexations. *See* RCW 36.70A.280.

The Board determines whether a county's plan is in compliance with the GMA. RCW

36.70A.300(3). When the Board determines that a plan or its amendments are flawed, it may

enter a finding of noncompliance or a determination of invalidity. RCW 36.70A.300, .302.

When the Board finds that the plan or its amendments are noncompliant, the Board remands the

matter back to the county with instructions to comply with the GMA. RCW 36.70A.300(3)(b).

---

[10] Futurewise challenged the Ridgefield annexation. We affirmed the superior court's dismissal of the challenge. *Futurewise v. City of Ridgefield*, No. 50406-5-II, slip op. at 2 (Wash. Ct. App. Jan. 29, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2050406-5-II%20Unpublished%20Opinion.pdf.

16

A plan or its amendments remain valid during the remand period following the Board's noncompliance finding.  RCW 36.70A.300(4); *Town of Woodway*, 180 Wn.2d at 174.

When the Board finds that the plan or its amendments are invalid, the Board must (1) find noncompliance and remand the plan back to the county and (2) enter a determination of invalidity supported by findings of fact and conclusions of law.  RCW 36.70A.302(1)(a), (b).  This invalidity determination must conclude that the flawed provision of the plan or its amendments substantially interfere with the goals of the GMA.  RCW 36.70A.302(1)(b).  "Upon a finding of invalidity, the underlying provision would be rendered void."  *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 138 Wn.2d 161, 181, 979 P.2d 374 (1999).

Significantly, an updated plan is presumed to be valid upon adoption.  RCW 36.70A.320(1).  In addition, a finding of invalidity is "prospective in effect and does not extinguish rights that vested under state or local law before receipt of the board's order by the city or county."  RCW 36.70A.302(2).  A finding of invalidity does not apply to certain vested rights, namely development permit applications.  RCW 36.70A.302(2)-(3).

C.    *The Board's Final Decision Order Is Prospective*

Here, the Board made a determination of invalidity regarding the UGAs.  The Board made related findings of fact and conclusions of law that the County's 2016 Plan Update did not comply with the GMA and determined that the UGAs for La Center, Ridgefield, and Battle Ground were invalid.  This determination rendered the UGA provisions void.  *King County*, 138 Wn.2d at 181.

The parties disagree as to the retroactivity of the determination of invalidity regarding the UGA provisions.  FOCC argues that the UGA provisions are essentially "void ab initio," or "null

17

from the beginning," and thus, we should unwind Ridgefield's and La Center's annexations of the UGAs to return the lands to their prior designations and jurisdiction under the County.  Br. of FOCC at 12.  Conversely, the cities and the LLCs argue that the UGAs are void beginning from the date of the Board's order.  We hold that the Board's order is prospective from the date of the order.

RCW 36.70A.302(2) plainly states that "[a] determination of invalidity is prospective in effect."  Prospective means "concerned with or relating to the future: effective in the future."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1821 (2002).  Here, the language of RCW 36.70A.302(2) is clear and unequivocal.  A determination of invalidity is effective going forward from the date of the order.  A determination of invalidity cannot alter whatever occurred prior to the Board's rendering of its decision.

D.      *The County Lacks Authority Over the Annexed UGAs*

The cities and LLCs argue that given that a determination of invalidity is prospective only, the UGA issues are moot because the UGAs were annexed by the respective cities before the Board's determination of invalidity.  Thus, the annexations deprived the Board and the County of authority to act, and consequently, the determination cannot have any legal effect.  We agree.

1.      *Mootness Following Annexation Legal Principles*

An issue is moot if the court can no longer provide effective relief.  *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 602, 229 P.3d 774 (2010).  "The central question of all mootness problems is whether changes in the circumstances that prevailed at the beginning of

18

litigation have forestalled any occasion for meaningful relief." *SEIU Healthcare 775NW*, 168 Wn.2d at 602 (internal marks omitted).

After land contiguous to a city has been designated UGA, that city may annex that contiguous land. RCW 35.13.005, .010. Article XI, section 11 of the Washington Constitution states, "Any county, city, town, or township may make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with general laws." RCW 35.63.080 authorizes a city council, board, or commissioners to prepare, adopt, and enforce plans for the physical development of the municipality.

All three regions of the growth management hearings board have examined this question and have held that after a city annexes land, that land is no longer within the county's jurisdiction. For example, in *Panesko v. Lewis County*, Lewis County expanded a UGA to include certain rural lands. No. 08-2-0007c, 2009 WL 2981888, at \*5 (W. Wash. Growth Mgmt. Hr'gs Bd. July 27, 2009). The City of Toledo successfully annexed this UGA land four months before the Board issued its FDO regarding Lewis County's compliance with the GMA. *Panesko*, at \*1, \*5-6. In reviewing Lewis County's compliance with the GMA following a remand period, the Board stated:

> It is unfortunate that the [UGA] was annexed in the midst of a proceeding to consider its designation as agricultural land of long term commercial significance. Nevertheless, the Board finds nothing egregious in the County's conduct. . . . The Board has no jurisdiction in the realm of municipal annexations. Further, now that the [UGA] has been annexed by the City of Toledo, the issue of whether this property should be included as part of the UGA is moot.
>
> *Conclusion*: The City of Toledo having annexed the [UGA], the land is no longer subject to the County's jurisdiction. The County having no ability to consider or alter the designation of this property as agricultural land of long term commercial significance, it need not take any further action in that regard.

19

No. 50847-8-II;
Cons. 51745-1-II

*Panesko*, at \*6 (footnotes omitted).

In *1000 Friends of Washington v. Snohomish County*, Snohomish County dedesignated an area called Island Crossing as agricultural and instead designated it as UGA. No. 03-3-0019c, 2009 WL 795934, at \*1 (Cent. Puget Sound Growth Mgmt. Hr'gs Bd. Feb. 19, 2009). The Board found these designations noncompliant with the GMA. *1000 Friends of Washington* at \*1. After our Supreme Court reversed the Board's determination, the City of Arlington annexed the Island Crossing UGA. *1000 Friends of Washington*, at \*2. On remand, the Board determined that "the sole question for the Board was whether the County had already taken steps to adjust its future land-use map and zoning designations in the Island Crossing area." *1000 Friends of Washington*, at \*2. The Board concluded, "Given that the Island Crossing area has been annexed by the City of Arlington and is no longer within the jurisdiction of Snohomish County, the Board concludes that a remand back to the County would be an empty act. The 'urban' land in question is now the City of Arlington's to govern." *1000 Friends of Washington*, at \*3.

In *Futurewise v. Benton County*, Futurewise argued that the Board should impose a determination of invalidity regarding Benton County's dedesignation of agricultural land that the County redesignated as UGA near the City of Kennewick. No. 14-1-0003, 2015 WL 999266, at \*1-2 (E. Wash. Growth Mgmt. Hr'gs Bd. Jan. 15, 2015). In its FDO, the Board determined that these designations were not compliant with the GMA but did not issue a determination of invalidity. *Futurewise*, at \*1. Futurewise argued that without a determination of invalidity, the UGA "could be quickly annexed to the City of Kennewick mooting the Board's Final Decision and Order." *Futurewise*, at \*2. The Board stated that annexing the land would indeed

20

"effectively moot the Board's Final Decision and Order." *Futurewise*, at *3.  In granting

Futurewise's request for a determination of invalidity, the Board stated that it "heard concerns

expressed at the hearing that a landowner-initiated annexation petition action might circumvent

the GMA compliance process and render compliance actions moot.  The Board notes that in the

absence of an invalidity order, petitioners have little remedy if an annexation of this property was

accomplished." *Futurewise*, at *4.

This is not the first time Clark County has created this circumstance.  In 2007, Clark

County dedesignated agricultural lands and redesignated these lands as UGA, including lands

near the cities of Camas and Ridgefield.  *Clark County v. W. Wash. Growth Mgmt. Hearings Bd.*,

161 Wn. App. 204, 214, 254 P.3d 862 (2011) *vacated in part by Clark County v. W. Wash.*

*Growth Mgmt. Hearings Bd.*, 177 Wn.2d 136, 142-43, 148, 298 P.3d 704 (2013).  Challengers,

including Futurewise, petitioned the Board to review the County's compliance with the GMA.

*Clark County*, 161 Wn. App. at 214.  Before the Board issued its FDO, Camas and Ridgefield

passed ordinances annexing UGA lands.  *Clark County*, 161 Wn. App. at 214.  Without notice of

the annexations, the Board determined that the County's designations of the annexed lands were

noncompliant with the GMA and invalid.  *Clark County*, 161 Wn. App. at 215.  However, after

learning of the annexations, the Board issued an order stating that it lacked jurisdiction over the

annexed lands.  *Clark County*, 161 Wn. App. at 220.

We held that because the County's comprehensive plan amendments were pending

review, the amendments were not final and parties could not act in reliance on them.  *Clark*

*County*, 161 Wn. App. at 224-25.  We further held that the legislature did not intend to allow a

county to evade review of their planning decisions by making a UGA designation followed by an

immediate annexation. *Clark County*, 161 Wn. App. at 225. Accordingly, we held that the annexations did not preclude the Board's jurisdiction to review the validity of the County's actions regarding the annexed lands. *Clark County*, 161 Wn. App. at 225-26.

Our Supreme Court vacated our decision regarding the annexed lands. *Clark County*, 177 Wn.2d at 148. The Supreme Court held that because the parties had not appealed issues regarding the annexed lands and because the annexed lands had no bearing on the resolution of claims on appeal, it was error to address issues relating to the annexed lands. *Clark County*, 177 Wn.2d at 148. Moreover, Justice Stephens concurred in reversing our opinion, joined by Justice Wiggins, stating:

> I would dismiss the claims challenging the annexation as moot in the context of this proceeding. The claims in question originated in a petition to the [Board] challenging Clark County's designation of certain lands under the [GMA]. The cities of Camas and Ridgefield have annexed the lands in question, and those annexations cannot be challenged in these proceedings. As a result, the question of whether the Board properly reviewed Clark County's prior designation of the annexed lands is moot. Dismissal should follow. *See Seguin v. Barei*, 163 Wn. 702, 703, 299 P. 655 (1931) (dismissing appeal where underlying interest in disputed property was dissolved in separate proceeding).

*Clark County*, 177 Wn.2d at 149 (Stephens, J. concurring).

2.  *Issues Regarding La Center's and Ridgefield's Annexed Lands Are Moot*

Issues regarding the annexed lands are moot because the Board can provide no effective relief. The Board's role is to determine whether the County is in compliance with the GMA. RCW 36.70A.300(1). However, after land contiguous to a city has been designated UGA, that city may annex that contiguous land. RCW 35.13.005, .010. Once that land has been annexed, it is within the city's sole jurisdiction. WASH. CONST. art. XI, § 11; RCW 35.63.080. As a result, when La Center and Ridgefield annexed previously unincorporated land into their municipalities,

22

the County lost its ability to plan for that land. RCW 35.63.080; 35A.11.020. The Board cannot compel the County to take action to come into compliance regarding land the County does not control. Such compulsion is beyond the quasijudicial powers of the Board. *See* RCW 36.70A.300(1).

FOCC compares this case to *Miotke v. Spokane County*, 181 Wn. App. 369, 325 P.3d 434 (2014). However, *Miotke* is distinguishable. In *Miotke*, Spokane County designated a UGA that was not subsequently annexed. *Miotke*, 181 Wn. App. at 373-75. While the Board reviewed the designation, development rights of property owners vested in the new UGA. *Miotke*, 181 Wn. App. at 373. The Board found the UGA designation noncompliant with the GMA. *Miotke*, 181 Wn. App. at 373. In an attempt to comply, Spokane County repealed the UGA designation and reverted the land to its prior designation. *Miotke*, 181 Wn. App. at 374.

On appeal, Spokane County argued that the vested urban development rights of the landowners in the former UGA prevented it from complying with the GMA. *Miotke*, 181 Wn. App. at 379. We held that the vested rights of property owners did not relieve Spokane County from its planning obligations under the GMA. *Miotke*, 181 Wn. App. at 379. Rather, it was Spokane County's designation of the UGA that created the opportunity for vested rights, and Spokane County was responsible for GMA compliance in its planning decisions. *Miotke*, 181 Wn. App. at 379-80.

*Miotke* is distinguishable because the disputed land *always* remained within the jurisdiction of Spokane County's comprehensive plan. *Miotke*, 181 Wn. App. at 373-75. Because of this, the Board retained the power to determine the county's compliance with the GMA. *Miotke*, 181 Wn. App. at 379-80.

23

No.    50847-8-II;
Cons. 51745-1-II

Here, because of the prospective nature of the Board's determination of invalidity, the County cannot exercise authority over annexed land no longer within its control.  As a result, issues regarding the annexed lands are moot.[11,12]

In this published portion of our opinion, we grant FOCC's motion to dismiss the County's and 3B's petitions for lack of appellate jurisdiction.  Further, we hold that issues regarding the annexed lands are moot.  In the unpublished portion of this opinion, we hold that the Board did not err regarding the remaining issues raised by CCCU and FOCC.  We remand back to the Board for further proceedings in accordance with this opinion.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[11] We note that the County and cities have previously engaged in a pattern of UGA designation followed by swift annexation. *Clark County*, 161 Wn. App. at 225.  Moreover, at oral argument, FOCC showed us a map of the UGA annexed by La Center.  Wash. Court of Appeals oral argument, *Friends of Clark County and Futurewise v. Clark County, et al*, No. 50847-8-II (July 3, 2019), at 21 min., 53 sec. (on file with court).  The UGA had irregular borders that followed specific property lines.  Additionally, in its compliance order, the Board noted the County's repeated evasion of GMA compliance review in previous instances where cities had rapidly annexed UGAs.  Regardless of the validity of any questionable behavior, this is an issue for the legislature.

[12] FOCC argues that the prospectivity of RCW 36.70A.302(2) is confined to only vested rights.  However, the plain language of RCW 36.70A.302(2) does not confine the prospective of a determination of invalidity to vested rights.  Further, RCW 36.70A.302 provides guidance regarding the effects of determinations of invalidity on savings clauses, interim ordinances, as well as property rights.  We reject FOCC's attempt to construe RCW 36.70A.302(2) more narrowly than the language provides.

IV. AGRICULTURAL DEDESIGNATION RESULTING FROM RILB DESIGNATION

The County argues that the Board misinterpreted and misapplied the law, and made decisions unsupported by substantial evidence, when it found the County's dedesignation of agricultural land to establish a RILB violated the GMA. The Board concluded that the County failed to comply with the GMA by not conducting a countywide or area-wide analysis of the economic viability of the agricultural industry of the county. The Board further determined that the RILB site met the agricultural resource land requirements.

The County is the only party that appeals these provisions of the FDO. As stated above, we grant FOCC's motion to dismiss the County's petition for judicial review of the FDO. Thus we do not address this argument.[13]

V. PUBLIC PARTICIPATION

CCCU argues[14] that the Board erred by dismissing its arguments that the County violated its public participation program when it (1) finalized Issue Paper 9, a document used to support the 2016 Plan Update, after voting to approve the plan amendment; (2) began the amendment process before adopting a public participation program by using reports adopted years before the

---

[13] Even if we were to consider this argument, our review of the record here reveals that the Board did not err.

[14] CCCU's approach to assigning error is challenged by other parties. CCCU acknowledges that it does not assign error to any of the Board's findings of fact, stating that, "the Board did conclude most of its analyses of the various issues as the 'Board finds and concludes . . .' CCCU does not believe these are findings of fact, but are legal conclusions that do not require a separate assignment of error." Br. of CCCU at 1-2 n.2 (citation omitted). We agree and consider CCCU's arguments because there are no clear findings of fact contained in the FDO regarding the portions of the FDO that CCCU challenges.

amendment process; (3) did not adequately respond to public comments; and (4) excluded rural landowners from participating in the amendment process.[15]  We hold that Board did not err when it dismissed CCCU's public participation arguments.

A.      *Facts Pertaining to the County's Public Participation Efforts*

A county planning under the GMA must establish a "public participation program identifying procedures providing for early and continuous public participation in the development and amendment of comprehensive land use plans."  RCW 36.70A.140.

In response to this GMA mandate, the County enacted an ordinance codifying its general PPP for GMA actions requiring notice and public hearings for planning related actions.  CLARK COUNTY CODE 40.510.040.  At the time of this litigation, the general PPP provisions were last amended in 2007.

In 2014, the Clark County Council passed an additional ordinance detailing its 2016 Plan Update (Plan Update PPP).  The Plan Update PPP detailed the steps the County intended to take to ensure public participation.  The Plan Update PPP facilitated public participation through the use of public meetings and workshops, a notification system for planning meetings and events, utilization of a "robust website" containing planning documents and schedules, and strategies for contacting interested parties and stakeholders, neighborhood associations, and news outlets.  AR at 4593.  This "robust website" provided the public access to potential plan amendments and

---

[15] CCCU's briefing argues that the *County* violated the GMA regarding public participation, not that the Board erred when determining that the County complied with the GMA regarding public participation.  *See, e.g.*, Br. of CCCU at 18, 24 ("The County violated the GMA."  "The County completely failed to respond to public comments.")  Here, CCCU has the obligation to argue how and why *the Board* erred.  Where applicable, we reframe CCCU's arguments to correctly reflect CCCU's burden.

26

supporting documents, past and future meeting information, and surveys to solicit citizen responses.

During the 2016 Plan Update process, the County held over thirty public hearings regarding the 2016 Plan Update. The County also held ten open houses and public meetings throughout the county. Further, the County provided opportunity for public comment through multiple countywide online surveys. The County communicated with its citizens in person and through newspaper, e-mail, mail, and television. This communication included sessions with a CCCU member actively participating in conversations with the County. The County received more than 3,000 public responses during the 2016 Plan Update process, of which over 1,100 were from individuals or groups with interests in rural or resource lands.

One of CCCU's claims in its petition for review to the Board was that the County failed to adhere to its Plan Update PPP and the public participation requirements of the GMA. The Board dismissed all of CCCU's public participation arguments, and concluded that the County complied the GMA in this respect.

B.      *Issue Paper 9*

CCCU argues that the County violated the GMA because Issue Paper 9[16] was finalized after the 2016 Plan Update was approved. Specifically, CCCU argues that Issue Paper 9 was completed on June 23, 2016, two days after the County adopted the 2016 Plan Update. CCCU contends that the June 21, 2016 adoption of the 2016 Plan Update precluded public participation

---

[16] Issue Paper 9 is "Clark County Agricultural and Forest Land Supplemental Mapping and Data Analysis." AR at 6916. Issue Paper 9 updated a 2012 rural lands study based on new information and reviewed literature regarding agricultural trends.

No.  50847-8-II;
Cons. 51745-1-II

regarding Issue Paper 9.  Because substantial evidence supports that the County did not adopt the
2016 Plan Update until June 28, 2016, we hold that the Board did not err when it dismissed these
arguments.

We review the Board's factual findings for substantial evidence.  *Kittitas County*, 172
Wn.2d at 155.  Evidence is substantial if a quantity of evidence is sufficient to persuade a fair-
minded person of the truth of the finding.  *Kittitas County*, 172 Wn.2d at 155.  The challenging
party has the burden of showing that the Board's decision is unsupported by substantial
evidence.  RCW 34.05.570(1)(a).

When CCCU raised this argument below, the Board found that the County adopted the
2016 Plan Update (Amended Ordinance No. 2016-06-12) on June 28, 2016.  Although the Board
located an ordinance from June 21 in the administrative record, that ordinance was never signed
into law.  Rather, the record shows that the County adopted Amended Ordinance No. 2016-06-12
on June 28, 2016.  The Board's finding that the County adopted the 2016 Plan Update on June
28, 2016, after Issue Paper 9 had been finalized, is supported by substantial evidence.  Further,
CCCU fails to show that the Board erred regarding the public's opportunity to comment on Issue
Paper 9.  Citizens had the opportunity to comment on Issue Paper 9 at a June 21, 2016 meeting,
and at least one citizen commented on Issue Paper 9 by e-mail.  We hold that the Board did not
err in dismissing CCCU's argument that the County violated the GMA regarding Issue Paper 9.

28

C.      *County's Use of Source Documents*

CCCU argues that the County violated the GMA when it began the 2016 Plan Update

process by using source documents from 2009 to 2012 to support the 2016 Plan Update.[17]

Specifically, CCCU argues that because these source documents precede the County's adoption

of the Plan Update PPP in 2014, the use of the older reports violated the GMA's public

participation requirements. We hold that the Board did not err when it dismissed these

arguments.

As discussed above, county or city planning under the GMA must establish a public

participation program. RCW 36.70A.140. The procedures identified in the PPP must provide

for broad dissemination of proposals, opportunity for written comments, public meetings after

effective notice, open discussion, communication programs, information services, and

consideration of and response to public comments. RCW 36.70A.140. However, inexact

compliance with the established public participation program and procedures does not invalidate

a comprehensive plan "if the spirit of the program and procedures is observed." RCW

36.70A.140.

WAC 365-196-600 expands on the GMA's public participation requirements, and offers

suggestions to cities and counties to best allow for public participation. Relevant here, this rule

recommends, "Whenever a provision of the comprehensive plan . . . is based on factual data, a

clear reference to its source should be made part of the adoption record." WAC 365-196-

600(2)(a).

---

[17] CCCU cites the following documents: (1) Agriculture Preservation Strategies Report, (2) Clark County Bicycle and Pedestrian Plan, (3) Aging Readiness Plan, and (4) Growing Healthier Report.

The Board found that the County had not violated RCW 36.70A.140, because the County complied with the statute by adopting the Plan Update PPP. CCCU argues that the use of older source documents violates the GMA under RCW 36.70A.140 and the general principles that the GMA require public participation. The County argues that the use of these underlying source documents is based on WAC 365-196-600(2)'s citation for factual data suggestion, and that these older source documents were publicly reviewed and considered previously.

Although the GMA mandates that a county must make a public participation program, CCCU does not identify, and we could not find, any GMA provision that mandates the underlying source documents to be subject to a county's PPP. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" *Hood Canal Sand & Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 296-97, 381 P.3d 95 (2016) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

Moreover, the public was provided with opportunity to comment on the source documents when commenting on the 2016 Plan Update. We hold that the Board did not err when dismissing CCCU's argument regarding source documents supporting the 2016 Plan Update.

D.      *Record of and Response to Public Comments*

CCCU argues that the County "failed to respond to public comments and maintained an incomplete public record" during and after the planning process. Br. of CCCU at 24. We hold that the Board did not err in dismissing these arguments.

No. 50847-8-II;
Cons. 51745-1-II

The public participation "procedures shall provide for . . . consideration of and response to public comments." RCW 36.70A.140. WAC 365-196-600(8) provides further guidance. The rule, in part, states:

> Consideration of and response to public comments. All public comments should be reviewed. Adequate time should be provided between the public hearing and the date of adoption for all or any part of the comprehensive plan to evaluate and respond to public comments. The county or city should provide a written summary of all public comments with a specific response and explanation for any subsequent action taken based on the public comments. This written summary should be included in the record of adoption for the plan.

WAC 365-196-600(8)(a).

Although chapter 365-196 WAC provides some procedural guidelines, compliance with these procedures "is not a prerequisite for compliance with the act." WAC 365-196-030(2). The Board's compliance determination must be based on a violation of the GMA itself. WAC 365-196-030(3). Chapter 365-196 WAC does not create a minimum list of criteria for procedural compliance with the GMA. Rather, counties "can achieve compliance . . . by adopting other approaches." WAC 365-196-030(2).

As used in chapter 365-196 WAC, "shall" means "a requirement for compliance with the act" and has the same meaning as "must." WAC 365-196-210(29). Conversely, "should" is "the advice of the department, but does not indicate a requirement for compliance with the act." WAC 365-196-210(30).

CCCU cites *Larson Beach Neighbors v. Stevens County*, No. 03-1-0003, 2004 WL 3404211, at *9 (E. Wash. Growth Mgmt. Hr'gs Bd. Feb. 10, 2004), and *Loon Lake Property Owners Ass'n v. Stevens County*, No. 03-1-0006c, 2004 WL 2624883 at *5 (E. Wash. Growth Mgmt. Hr'gs Bd. Oct. 15, 2004), for the proposition that in the GMA context, "should" conveys

31

a mandatory duty. CCCU misconstrues these Board decisions. *Larson* addresses language in a county's PPP that required review of all public comments but that the county "may" respond to comments in writing or verbally. *Larson*, at *8. The Board concluded that the county's PPP created a mandatory requirement to respond with an option of how to fulfill that requirement. *Larson*, at *9. Here, the County's lack of mandatory language in its 2016 Update PPP distinguishes *Larson*.

In *Loon Lake*, the Board found that the county failed to respond to public comments. At *5. After a compliance remand, a challenger wanted the Board to interpret its FDO to force the county to reopen the record to respond to public comments. *Loon Lake*, at *5. The Board stated that there was no reason to reopen to record, and that the county had created a "summary of public comments and the County's response thereto in accordance with the requirements of WAC 365-195-600." *Loon Lake*, at *6. Procedurally, *Loon Lake* addressed a Board's remedies during the period for remand and compliance. The Board referenced the county's previous actions regarding public comments to hold that the challenger did not show that reopening the record was necessary. *Loon Lake*, at *6. *Loon Lake* is distinguishable because here, CCCU's arguments are based on the FDO, not the compliance order. Neither of these Board decisions conflict with the explicit permissive language in chapter 365-196 WAC.

The Plan Update PPP provides a variety of methods and mediums the County was to use to provide the public with information and an opportunity to participate. The plain language of RCW 36.70A.140 states that a county's PPP shall provide for the response to public comment. Although the 2016 Plan Update PPP mentions public review and response to comments, it does not require the County to respond to all comments. Moreover, inexact compliance with the

established public participation program and procedures does not invalidate a comprehensive plan "if the spirit of the program and procedures is observed."  RCW 36.70A.140.

The record shows that the County considered and responded to a large number of public comments.  The County heard citizens at meetings and open houses, received e-mails, collected responses from surveys, and held meetings with various interested parties.  The GMA does not require the County to formally consider and respond to all public comments.

CCCU also argues that the County maintained an incomplete record of the public comments it received during the 2016 Plan Update.  Similarly, CCCU's argument is based on the permissive WAC 365-196-600(8)(a) rather than mandatory GMA provisions.  The plain language of RCW 36.70A.140 does not require a county to index and maintain a record with every single comment offered during the planning process.  We hold that the Board did not err when it dismissed CCCU's arguments that the County failed to respond to public comments and maintained an incomplete public record during and after the planning process.

E.    *County's Use of Internet*

CCCU argues that the County's 2016 Plan Update PPP's reliance on internet communication excluded rural citizens, thus violating the GMA.  The Board dismissed CCCU's argument.  We hold that the Board did not err.

RCW 36.70A.035(1) mandates public participation requirements that are "reasonably calculated to provide notice to property owners and other affected and interested individuals."  RCW 36.70A.035(1) lists specific examples of "reasonable notice provisions," including "[p]ublishing notice in a newspaper, [n]otifying public or private groups with known interest in a

certain proposal, and [p]ublishing notice in agency newsletters or sending notice to agency mailing lists." In addition, WAC 365-196-600(4)-(5) states:

> (4) Each county or city should try to involve a broad cross-section of the community, so groups not previously involved in planning become involved.
>
> (5) Counties and cities should take a broad view of public participation. The act contains no requirements or qualifications that an individual must meet in order to participate in the public process. If an individual or organization chooses to participate, it is an interested party for purposes of public participation.

CCCU argues that the County violated WAC 365-196-600(4)-(5) by failing to use noninternet based communication to include rural citizens in the 2016 Plan Update process. CCCU argues that rural citizens would be less likely to use the County's online portal that provided the public access to potential plan amendments and supporting documents, past and future meeting information, and surveys to solicit citizen responses.

In addition to the County's plan update website, the County disseminated information to its citizens through a number of mediums. The County communicated through e-mail, mail, newspaper, television. CCCU fails to show how the County's use of multiple mediums failed to include rural citizens. We hold that the Board did not err when it dismissed CCCU's argument that the County's Plan Update PPP's reliance on internet communication excluded rural citizens.

## VI. DESIGNATION OF AGRICULTURAL AND FORESTLANDS CAPABLE OF LONG TERM COMMERCIAL PRODUCTION

CCCU argues that the County violated the GMA regarding its designation of agricultural and forestlands capable of long term commercial production. Specifically, CCCU argues that the County incorrectly relied on Issue Paper 9, which used "data layers" in addition to United States Department of Agriculture Natural Resources Conservation Service (NRCS) standards. CCCU

argues that the Board's acceptance of the County's Issue Paper 9 was arbitrary and capricious. We hold that Board did not err by dismissing this argument.[18]

In its comprehensive plan, a county designates eligible land as agricultural or forestlands capable of long term commercial production.  RCW 36.70A.070(1).  One factor counties consider when designating lands for these purposes is soil composition.  WAC 365-190-050(3)(b)(ii).  Counties are to use soil data from NRCS.  WAC 365-190-050(3)(b)(ii).

In the designation process here, the County used soil data from NRCS as well as other data.  The Board found and concluded, "The County used the NRCS layer and other data; nothing in the WAC precludes them from using other data, as long as they use NRCS data as well.  CCCU's claim about data layers is dismissed."  AR at 10510.

When considering land for designation as agricultural resource land, counties consider three factors, including the land's capability of use for agricultural production.  WAC 365-190-050(3)(b).  This includes using data from NRCS.  WAC 365-190-050(3)(b)(ii) states:

> In determining whether lands are used or capable of being used for agricultural production, counties and cities shall use the land-capability classification system of [NRCS] as defined in relevant Field Office Technical Guides.  These eight classes are incorporated by the United States Department of Agriculture into map units described in published soil surveys, and are based on the growing capacity, productivity and soil composition of the land.

---

[18] Preliminarily, the County argues that this issue is not before the court because the County did not amend any part of the comprehensive plan to designate any agricultural or forest lands. Further, the County argues that any designations of agricultural or forest lands occurred in prior plan amendments, more than 60 days before CCCU filed its petition to the Board.  In reply, CCCU cites to a different portion of the Board's FDO that analyzes the dedesignation of agricultural lands to support its contention that the County made agricultural and forest land designations.  Although the County raised this argument to the Board, the Board did not address it; instead it reached the merits of CCCU's data layers argument.  We address the merits of CCCU's argument in the interest of fairness.

Here, CCCU is not arguing that the County did not use the NRCS data.  Rather, CCCU argues that the County's use of data in addition to the NRCS data violated the GMA and the rule.[19]  But the rule does not prohibit a county's use of additional data to determine the agricultural capability of lands; the rule merely requires counties to use the NRCS data.  CCCU acknowledges that the County indeed used the NRCS data.  We hold that the Board did not err when concluding that WAC 365-190-050(3)(b)(ii) does not preclude the use of data in addition to the NRCS data.

VII.  REDUCING MINIMAL PARCEL SIZES FOR AGRICULTURAL AND FORESTRY LANDS

CCCU argues that the Board erred in concluding the reduction of agricultural and forestland parcel sizes violated the GMA.  Specifically, CCCU argues that the Board applied the incorrect legal standard.  Further, CCCU argues that even if the Board applied the correct legal standard, its decision is not supported by substantial evidence.  We disagree.

During the 2016 Plan Update, the County reduced agricultural land parcel sizes from 20 acres to 10 acres and forestry land from 40 acres to 20 acres.  FOCC argued to the Board that these parcel size reductions violated the GMA.  FOCC placed multiple peer-reviewed articles in the record.  These articles conclude that the minimum parcel size necessary to conserve agricultural and forestlands must be at least 20 to 40 acre parcels.  Further, the County's Issue

---

[19] CCCU references an e-mail where a County planner used the term "data layers" to argue that the NRCS classification system did not produce the result the County wanted, so the County used some unspecified "data layers" to come to a better result.  However, CCCU does not cite to anything in the record to support its allegation that the County was using extra data sources to skew land designations, nor does CCCU show us how the alleged use of these "data layers" gave a result different than NRCS data.

Paper 9 stated that very small and small farms produce little income and are mostly supported by nonfarm income. The Board examined minimum parcel sizes in other regions of Washington and other states to conclude that allowing 20 acre parcels in Clark County would not preserve the agricultural industry. The Board found the County noncompliant regarding these parcel size reductions.

After a county designates land as agricultural or forestland, the GMA requires the adoption of regulations to assure the conservation of these lands. RCW 36.70A.060(1)(a). Specifically, a county shall adopt regulations "to assure the conservation of agricultural, forest, and mineral resource lands." RCW 36.70A.060(1)(a). These regulations shall "assure that the use of lands adjacent to agricultural, forest, or mineral resource lands shall not interfere with the continued use . . . of these designated lands for the production of food, agricultural products, or timber." RCW 36.70A.060(1)(a). Counties have a duty to designate and conserve these agricultural and forestlands to assure the preservation and development of these industries. *King County*, 142 Wn.2d at 558.

CCCU argues that the Board used the "assure" language to improperly shift the burden to the County to prove it was conserving agricultural and forestlands. Instead, CCCU argues, the burden belonged to the challenger, FOCC, when FOCC contested the County's GMA compliance regarding parcel sizes.

CCCU's statement of the burden is correct. RCW 34.05.570(1)(a). However, the Board did not improperly shift the burden to the County to prove the 2016 Plan Update conserved agricultural and forestlands. Rather, the Board held that FOCC bore and met its burden of

37

showing that that the reduction of parcel sizes was clearly erroneous. We hold that the Board did not err in this regard.

Further, CCCU argues that the Board should have deferred to the County when it reduced the parcel sizes. Although we defer to a county for planning decisions, this deference must remain within the bounds of the GMA. *King County*, 142 Wn.2d at 561. FOCC's evidence overcame the deference to the County.

Alternatively, CCCU argues that the Board's decision is not supported by substantial evidence. CCCU bears the burden of showing that the Board's decision is unsupported. RCW 34.05.570(1)(a). In the 2016 Plan Update, the County reduced agricultural land parcel sizes from 20 acres to 10 acres and forestry land from 40 acres to 20 acres. FOCC argued to the Board that these parcel size reductions violated the GMA. The Board agreed and found the County noncompliant regarding these parcel size reductions. The Board examined the County's Issue Paper 9 as well as articles and studies submitted by FOCC. After reviewing the articles and Issue Paper 9, the Board found that FOCC carried its burden to prove that reducing parcel sizes was clearly erroneous.

We hold that there is sufficient evidence in the record to persuade a fair-minded person that the Board did not err when concluding that of the County's attempt to reduce agricultural and forestland parcel sizes was clearly erroneous under the GMA. The Board relied on multiple peer-reviewed articles to conclude that the minimum parcel size necessary to conserve agricultural and forestlands was at least 20 to 40 acre parcels. Further, the Board relied on the County's Issue Paper 9 that very small and small farms produce little income and are mostly supported by nonfarm income. The Board examined minimum parcel sizes in other regions to

conclude that reduced parcel sizes would not preserve the agricultural industry. Substantial evidence supports the Board's conclusion that reducing the parcel sizes for agricultural and forestry lands was clearly erroneous and violated the GMA. We hold that the Board did not err when it ruled that the reduction of parcel sizes was clearly erroneous.

VIII. OFFICE OF FINANCIAL MANAGEMENT POPULATION PROJECTION

CCCU argues that the "the County failed to plan for the likely population growth, by choosing a metric that is historically too low, when another [Office of Financial Management (OFM)] projection was readily available." Br. of CCCU at 34. We hold that the Board did not err when it dismissed this argument.

The GMA requires counties to use population projections from the OFM for their comprehensive plans and amendments. RCW 36.70A.110(2). For the 2016 Plan Update, the OFM offered three population projections: high (681,135), medium (562,207), and low (459,617). The County chose the medium population projection. In 2015 and during the update process, OFM released its annual population and growth rate for the County, estimating the County's 2014 population to be approximately 451,000 and growing at a rate higher than the 2016 Plan Update projected.

Counties are required to use twenty-year population projections from the OFM for their growth management comprehensive plans and amendments. RCW 36.70A.110(2). The legislature requires OFM to prepare the population projections and entrusts counties to plan based on these OFM projections. *Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 188 Wn. App. 467, 485, 353 P.3d 680 (2015). The OFM is required to provide counties with a high, middle, and low population projection number for their planning processes. RCW 43.62.035.

39

The middle projection represents the most likely population projection.  RCW 43.62.035.

Counties have discretion to make many choices about accommodating growth in their

comprehensive plans and amendments.  RCW 36.70A.110(2).  Separately, the OFM is also

required to provide counties with their annual population numbers and their growth rates for the

preceding ten years.  RCW 43.62.035.

Here, CCCU does not articulate specifically how it is challenging the Board's decision.

Assuming that CCCU is arguing the Board erred in approving the County's selection because the

middle projection was clearly erroneous, we disagree.  The OFM offered three population

projections: high (681,135), medium (562,207), and low (459,617).  The County chose the

medium population projection.  Choosing any of the three offered OFM population projections

was within the County's discretion under RCW 36.70A.110(2).  *See Spokane County*, 188 Wn.

App. at 485.  As a result, the Board did not err when it concluded that the County did not violate

the GMA when choosing a population projection.

Additionally, CCCU argues that the County failed to revise population projections when

the OFM updated the County's annual population number in 2015.  However, the annual

population number is separate from the OFM's required twenty-year growth management

projections.  RCW 43.62.035.  Because the County used the required population projections in

its 2016 Plan Update, we hold that the Board did not err regarding the OFM population

projections.

IX. RURAL GROWTH PROJECTIONS

CCCU argues that the County violated the GMA by using arbitrary and capricious population projections that impermissibly capped rural growth. The Board dismissed CCCU's arguments. We hold that the Board did not err.

To plan for rural growth in the 2016 Plan Update, the County made planning assumptions derived from a rural vacant buildable lands model. CCCU argued that this model "capped" rural growth or, stated another way, planned in a way that limited growth in rural lands. AR at 10515. The Board held that nothing prevented the County from using urban models to project rural growth.

RCW 36.70A.110(2) states, in part, "Based upon the growth management population projection made for the county by the office of financial management, the county . . . shall include areas and densities sufficient to permit the *urban* growth that is projected to occur in the county or city for the succeeding twenty-year period." (Emphasis added.)

CCCU cites extensively to *Clark County Citizens United, Inc. v. Clark County Natural Resource Council*, 94 Wn. App. 670, 972 P.2d 941 (1999) for the proposition that the GMA prohibits the use of population projection techniques developed for urban areas in rural areas. That case did not so hold. In *Clark County Citizens United*, we considered whether a county must use OFM's population projections as a cap on rural growth. 94 Wn. App. at 675. We held that, "nothing in the GMA provides that a county must use OFM's population projections as a cap or ceiling when planning for non-urban growth." *Clark County Citizens United*, 94 Wn. App. at 676. We noted, "Without so holding, we assume that the GMA *permits* a county to use OFM's population projections when planning for lands outside its urban growth areas. That

41

question is not presented by this appeal." *Clark County Citizens United*, 94 Wn. App. at 676 n.23.

CCCU argues that "it has been decisively settled that the use of population projections developed for urban area planning cannot lawfully be employed to project or plan for rural growth." Br. of CCCU at 37. As shown above, CCCU is incorrect.

In fact, CCCU does not identify any authority that prevents the use of OFM population projections for rural growth. Further, RCW 36.70A.110(2) regulates urban population projections, not rural. We hold that CCCU fails to show how the Board erred when determining that the County did not violate the GMA regarding its rural growth projections.

For the first time in its reply brief, CCCU contests the County's actions under RCW 36.70A.115. RCW 36.70A.115 requires counties to ensure there is sufficient land capacity for development. However, CCCU neither raised this issue to the Board nor in its opening brief. Because we do not address issues not raised to the Board, RCW 34.05.554(1), we decline to address this argument.

## X. RURAL POPULATION DISTRIBUTION AND GROWTH PROJECTION

CCCU argues that the Board erred when it dismissed CCCU's argument that the County violated the GMA when it failed to define rural character and also when it used a 90 percent urban, 10 percent rural population projection for the 2016 Plan Update. Specifically, CCCU argues that the County failed to define "rural character" in the 2016 Plan Update and that because the County did not define "rural character" it cannot justify the 90/10 population distribution. Br. of CCCU at 43. Below, the Board dismissed CCCU's argument. We hold that the Board did not err.

Counties should adopt a definition of rural character.  WAC 365-196-425(2)(c).  The

2016 Plan Update states:

> In Clark County, the rural area represents a lifestyle based on historical development patterns and resource-based industries such as commercial forestry, Christmas trees, dairies, berry farming, orchards and mining.  Today much of the county's rural lands include a mix of resource, small commercial, recreational and residential uses.
>
> No single attribute describes the rural landscape. Instead combinations of characteristics which are found in rural settings impart the sense of what we commonly describe as rural.  These factors are cumulative in nature and the more of these factors that are present influence feelings of whether a particular area is rural. In many cases these characteristics are subjective and frequently not all of them are found in each area.  When describing rural conditions the public will often describe these areas in terms of a certain lifestyle.  The factors listed below are those that usually describe "rural character."
>
> * the presence of large lots;
> * limited public services present (water, sewer, police, fire, roads, etc.);
> * different expectations of levels of services provided;
> * small scale resource activity;
> * undeveloped nature of the landscape;
> * wildlife and natural conditions predominate;
> * closer relationship between nature and residents;
> * personal open space;
> * a sense of separation from intense human activity;
> * a sense of self sufficiency; and
> * rural commercial supporting rural area population.

AR at 1411.  The County also adopted a 90/10 urban to rural population distribution.  The Board

dismissed CCCU's arguments noting that the requirements of chapter 265-196 WAC are

permissive and that the County has broad discretion to meet the GMA goals of encouraging

development in urban areas and reducing sprawl.

Counties have broad discretion in how they plan for growth.  RCW 36.70A.110(2).

Among other goals, counties should encourage development in urban areas and reduce sprawl.

RCW 36.70A.020(1), (2). WAC 365-196-425 states that counties should include a rural element in their comprehensive plans. But the rule but does not mandate counties to define this term, stating, "Counties *should* adopt a locally appropriate definition of rural character." WAC 365-196-425(2)(c) (emphasis added). Further, the counties' "rural element should provide for a variety of densities that are consistent with the pattern of development established in its definition of rural character." WAC 365-196-425(3)(a).

Although chapter 365-196 WAC provides some procedural guidelines, compliance with these procedures "is not a prerequisite for compliance with the act." WAC 365-196-030(2). The Board's compliance determination must be based on a violation of the GMA itself. WAC 365-196-030(3). As stated above, chapter 365-196 WAC does not create a minimum list of criteria for procedural compliance with the GMA. Rather, counties "can achieve compliance . . . by adopting other approaches." WAC 365-196-030(2).

CCCU argues that the County failed to define "rural character." Br. of CCCU at 43. Although not strictly required, the County generally defined "rural character" in its 2016 Plan Update. The County detailed factors that it determined described "rural character," including large lots, different expectations for community services, and a sense of self-sufficiency. We hold that the Board did not err when dismissing CCCU's argument insofar as it is based on the County's failure to define rural character.

CCCU also argues that the 90/10 population distribution did not align with the actual 86/14 population distribution in the County. CCCU argues that this "90/10 distribution does not comply with the County's planning obligations under WAC 365-196-425(3)(a)." Br. of CCCU at 45. CCCU seems to argue that because the 90/10 goal distribution is not the same as the 86/14

current population distribution, the goal distribution is not consistent with the true rural character

of the County.  However, CCCU does not show how the goal distribution violates the GMA.

First, chapter 365-196 WAC does not add procedural requirements for GMA compliance.  WAC

365-196-030(2)-(3).  CCCU's alleged violation of chapter 365-196 procedures alone does not

support a GMA violation.  Second, the County has broad discretion to plan for growth.  RCW

36.70A.110(2).  Here, CCCU fails to meet its burden to show that the Board erred.  We hold that

the Board did not err when dismissing CCCU's population distribution arguments.

XI.  GMA Private Property Considerations

CCCU argues that the Board erred when it dismissed CCCU's argument that the County

violated the GMA goal of adequately considering the impacts of the 2016 Plan Update on private

property rights.  We hold that CCCU's argument fails.

Protection of private property rights is enumerated at goal 6 in the GMA.  RCW

36.70A.020(6).  In the 2016 Plan Update, the County recited this goal, stating that it gave private

property rights due consideration during the planning process.  Further, the County had extensive

contacts with private property owners, stated views regarding the impacts of the 2016 Plan

Update on private property rights, and heard from landowners regarding their concerns about

private property rights.  Further, as exhibited by the County's 2016 Plan Update PPP, it heard

from citizens and considered private property rights.

One of the GMA's 13 enumerated goals "used exclusively for the purpose of guiding the

development of comprehensive plans" states: "Property rights.  Private property shall not be

taken for public use without just compensation having been made.  The property rights of

45

landowners shall be protected from arbitrary and discriminatory actions."  RCW 36.70A.020(6).

WAC 365-196-725 further details:

> (1) Comprehensive plans and development regulations adopted under the act are subject to the supremacy principle of Article VI, United States Constitution and of Article XI, Section 11, Washington [S]tate Constitution.
>
> (2) Counties and cities planning under the act are required to use a process established by the state attorney general to assure that proposed regulatory or administrative actions do not unconstitutionally infringe upon private property rights. . . .

A party may challenge land use regulations as unconstitutional regulatory takings under article I, section 16 of the Washington Constitution.  *Thun v. City of Bonney Lake*, 3 Wn. App. 2d 453, 459, 416 P.3d 743 (2018).

CCCU's argument is difficult to discern.  CCCU argues broadly that the County made determinations about property that were contrary to facts, and that the County failed to implement the goal of protecting private property rights.  However, CCCU does not explain anything further in its argument.

Specifically, CCCU argues, "Determining the development potential of property based on a population projection standard that has never been accurate is in disregard of all the facts and circumstances.  Similarly, the County's decision to reject rezoning to smaller parcel sizes in the rural area is contrary to the actual facts and circumstances in Clark County."  Br. of CCCU at 49. It appears that CCCU is rearguing that the population projection and the parcel sizing were arbitrary and capricious, an argument we rejected above.  Further, CCCU argues that "the Board errs in concluding that [RCW 36.70A.020(6)] is actually implemented because there is a recitation in the ordinance that the County has given some rights 'due consideration.'"  Br. of CCCU at 49-50 (quoting AR at 10472).

46

RCW 34.05.570(3) provides nine enumerated ways to challenge an agency action through judicial review. However, CCCU does not sufficiently explain to this court how it is challenging the Board's decision under that statute. Nor does CCCU invoke RCW 34.05.570(3)(a), which would have allowed us to review the Board's orders for constitutional violations. Rather, CCCU contends only that the Board acted arbitrarily and capriciously regarding the GMA private property goal. CCCU has failed to sufficiently explain to us how the Board erred and, thus, fails to carry its burden.

## XII. BOARD'S COMPLIANCE ORDER

FOCC argues that the Board erred in its compliance order when it declared issues moot and found the County's readoption of prior provisions was compliant with the GMA. We hold that the Board did not err.

A. *Facts Regarding the Board's Compliance Order*

In its FDO, the Board found some provisions noncompliant and determined other provisions invalid. FOCC raises arguments for two County decisions the Board found noncompliant, Issues 11 and 13.

For Issue 11, the Board considered the County's creation of AG-10 and FR-20 districts, replacing AG-20 and FR-40 districts. In its FDO, the Board found and concluded that "reducing parcel sizes for agricultural and forestry lands will not meet requirements in RCW 36.70A.060 or .070 nor does it meet the standards established in *King County*." AR at 10552. To come into compliance, the County amended its 2016 Plan Update by passing Ordinance 2017-07-04, which changed back the AG-10 to AG-20 and FR-20 to FR-40.

For Issue 13, the Board considered the County's single rural density designation, replacing its varied rural densities provisions.  In its FDO, the Board found and concluded that "the County did not comply with RCW 36.70A.070(5) regarding a variety of rural densities." AR at 10552.  To come into compliance, the County adopted Ordinance 2017-07-04 which amended the single plan designation for rural lands and reestablished the prior varied rural densities.

In its compliance order, the Board noted that both provisions readopted by the County had previously been found GMA compliant.  Issue 11's parcel sizes had been determined compliant in the County's 2007 Comprehensive Plan.  CAR at 1573 (citing *Karpinski v. Clark County*, No. 07-2-0027 (W. Wash. Growth Mgmt. Hr'gs Bd. Sept. 4, 2014)).  In the compliance order, the Board stated:

> Here, Clark County repealed the ordinance amendments challenged in Issue 11, the Issue 11 challenge is moot, and the County's action addressing the Issue 11 provisions must be found compliant.  With the County amendments in Ordinance 2017-07-04 regarding agricultural and forest lands, the Board finds and concludes that the County is now in compliance with RCW 36.70A.060 and RCW 36.70A.070 in regards to Issue 11.

CAR at 1574 (emphasis omitted).

Further, the Board stated, "The challenge to Issue 13 is now moot because the County readopted a previously GMA-compliant variety of rural densities.  With the County amendments in Ordinance 2017-07-04 for Issue 13, the Board finds the County's action regarding a variety of rural densities, achieves compliance with RCW 36.70A.070(5)."  CAR at 1575 (emphasis omitted).

48

No. 50847-8-II;
Cons. 51745-1-II

B.      *Compliance Legal Principles*

Following a remand period to address noncompliant comprehensive plan provisions, the

Board determines whether a county has achieved GMA compliance.  RCW 36.70A.330(1)-(3).

Parties may challenge the legislation enacted in response to the Board's final order.  RCW

36.70A.330(2).

Although parties are not entitled to challenge any and all aspects of a county's

comprehensive plan, a party may challenge amendments made in an updated comprehensive

plan.  *Thurston County*, 164 Wn.2d at 344, 347.  When the Board finds noncompliance on an

issue, the county's new comprehensive plan provisions are presumed valid, and the challenger

bears the burden to establish that the new provisions are clearly erroneous under the GMA in

view of the entire record before the Board.  RCW 36.70A.320(1)-(2).

In *Hazen v. Yakima County*, challengers petitioned the Board regarding the compliance of

certain plan provisions.  No. 08-1-0008c, at 14 (E. Wash. Growth Mgmt. Hr'gs Bd. April 5,

2010).  During the pendency of the Board's review, Yakima County amended some provisions,

removing one provision outright and adjusting others.  *Hazen*, at 14-15.  The Board found that

consideration of the repealed provision was moot, but that the amended provisions remained

under the Board's compliance review.  *Hazen*, at 15.

C.      *The Board Did Not Err by Finding Compliance*

FOCC argues that the County did more than merely repeal noncompliant provisions and

reinstate former plan provisions.  We disagree.

Following the Board's noncompliance findings on Issues 11 and 13, the County

reenacted the pre-2016 Plan Update plan provisions.  The Board previously found these

49

provisions compliant with the GMA.  Because of this, the Board determined that the issues regarding the now-repealed provisions were moot and found the County compliant regarding the reenacted provisions.

FOCC argues that this court's opinion in *Miotke* supports the proposition that even if the previous provisions had been determined compliant, their current compliance based on land use is subject to renewed scrutiny.  Because *Miotke* is distinguishable, we disagree.

In *Miotke*, while the Board reviewed the county's updated UGA designation, development rights of property owners vested in the new UGA.  *Miotke*, 181 Wn. App. at 373.  The Board found this UGA designation noncompliant with the GMA and made a determination of invalidity.  *Miotke*, 181 Wn. App. at 373.  In an attempt to comply, Spokane County repealed the UGA designation and reverted the land to its prior designation.  *Miotke*, 181 Wn. App. at 374.  This court held that the vested rights of property owners did not relieve the county of its planning obligations under the GMA.  *Miotke*, 181 Wn. App. at 379.  Rather, because the UGA was subject to a determination of invalidity, the county was responsible for showing GMA compliance in its new planning decision.  *Miotke*, 181 Wn. App. at 379-80.

In *Miotke*, the Board made a determination of invalidity, shifting the burden to the county to prove compliance.  181 Wn. App. at 379-80.  Here, however, the Board found the County merely noncompliant regarding Issues 11 and 13.  Without a determination of invalidity, the burden remains with the challenger, FOCC, to show the Board erred.  Here, FOCC has not met its burden to show that the Board acted in a clearly erroneous manner when finding the County compliant for Issues 11 and 13 after it repealed the challenged provisions and readopted

previously compliant provisions.  Accordingly, we hold the Board did not err when concluding that the County achieved compliance regarding Issues 11 and 13.

## XIII.  CONCLUSION

We grant FOCC's motion to dismiss the County's and 3B's petitions for judicial review of the FDO for lack of appellate jurisdiction.  We hold that the Board's finding of the County's noncompliance regarding the County's UGAs designations are moot.  Further, we hold that the Board did not err when rejecting all of CCCU's arguments.  Finally, we hold that the Board did not err when it determined that the County was compliant regarding Issues 11 and 13.  We remand to the Board for further proceedings in accordance with this opinion.

Worswick, J.

We concur:

Maxa, C.J.

Glasgow, J.

51